147 N.J. Super. 84 (1975)
370 A.2d 856
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AARON GAINES AND ARMAND D. POWERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 1975.
Decided July 15, 1975.
*86 Before Judges MATTHEWS, FRITZ and BOTTER.
*87 Mr. Stanley C. Van Ness, Public Defender, attorney for appellants (Mr. Maurice J. Molyneaux, designated counsel, of counsel and on the brief for appellant Aaron Gaines; Mr. Philip A. Kahn, designated counsel, of counsel and on the brief for appellant Armand D. Powers).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Mart Vaarsi, Deputy Attorney General, of counsel and on the briefs).
The opinion of the court was delivered by BOTTER, J.A.D.
These are consolidated appeals from convictions of defendants Gaines and Powers in a jury trial for the crimes of (a) carrying a firearm in a motor vehicle (N.J.S.A. 2A:151-41) and (b) possession of a silencer (N.J.S.A. 2A:151-14). Both defendants were charged with possession of an H.&R. revolver (first count), a 7.65-mm. Baretta automatic pistol (second count) and the silencer device (fourth count). Defendant Gaines alone was charged with possession of an Iver Johnson revolver (fifth count). Defendants were also charged, in the third count, with altering or obliterating the serial number of the Baretta automatic, but this count was dismissed by the trial judge at the close of the State's case. Defendant Gaines was sentenced to concurrent terms of three to five years in State Prison on each of the four convictions. Defendant Powers was sentenced to concurrent terms of three to five years in State Prison on each of his three convictions. Another defendant, Albert Lee Phillips, was charged with the same crimes in the first four counts of the indictment, but he did not appear for trial. A warrant for his arrest was issued and his case was severed.
On April 10, 1973 defendants Powers and Gaines were in a car driven by codefendant Phillips which was stopped by State Trooper Sinopoli on the New Jersey Turnpike. Beneath a towel on the rear floor of the car the trooper found a loaded .22-caliber H.&R. revolver, a 7.65-mm. Baretta *88 automatic handgun, with its serial number obliterated, and a silencer in a case. Another loaded revolver was found in the pocket of a jacket worn by Gaines. Gaines had been seated in the right front seat and Powers in the rear. The parties stipulated that the guns were operable and that the device was a silencer within the meaning of the statute.
Gaines testified that the three men met at a tavern in Brooklyn and agreed to leave later that night for a trip to North Carolina, with Gaines intending to continue on to Florida by a commercial airline. The three separated, met again at Gaines' house after midnight, made a stop in the Bronx and continued on to the New Jersey Turnpike. After being stopped by Trooper Sinopoli, Powers, according to Gaines, passed a gun to Gaines and told him to "ditch it." Gaines placed the gun in his pocket. Gaines denied having prior knowledge of the presence of the guns and silencer in the car. Gaines testified that only his overnight bag and a paper bag containing his working shoes and dress shoes were in the trunk of the car. Defendant Gaines had known Phillips for ten years and Powers for two.
After the appeal was filed it was discovered that a transcript of one trial day, October 4, 1973, could not be obtained because the official court reporter's notes of that date were missing. Therefore, as in State v. Smith, 84 N.J. Super. 452 (App. Div. 1964), certif. den. 43 N.J. 270 (1964), this court remanded the matter to the trial judge for reconstruction of the record of that date. By letter dated May 16, 1974 the trial judge submitted a statement certifying the record of the proceedings on October 4. The State's case had been completed on the previous day, October 3, 1973. On October 4 the judge dismissed the third count, defendant Gaines testified, a character witness testified for Gaines, all parties rested, and the judge denied defendants' motions to dismiss the remaining counts. The procedure employed by the trial judge in establishing the record of those proceedings is as described in his May 16, 1974 letter as follows:
*89 Upon receipt of the Order, each defendant and the Prosecutor were directed to submit a statement of the substance of the proceedings heard on Thursday, October 4, 1973. All counsel exchanged proposed statements. Upon receipt, I reviewed my trial notes with each of the attorneys and all trial notes are substantially the same. The significant points of difference are noted herein. Thereafter, a hearing was held in open court in the presence of the defendants who had an opportunity to contribute their recollections of what was had. After consideration of the statements of the attorneys, the statements of the parties and my own recollection together with the official records I hereby certify the following to be an accurate and complete statement of the proceedings held in this court on Thursday, October 4, 1973. The only significant difference being the phraseology of a certain statement made by Mr. Phillips, a co-defendant, whose trial was severed because he had failed to appear for trial.
During the trial Officer Sinopoli testified on cross-examination that he interrogated codefendant Phillips at the police station in the presence of defendants Gaines and Powers as well as other police officers. He testified on voir dire, on cross-examination by the attorney for Powers, as follows:
Q He did say to you at least these words, that Mr. Powers had nothing, didn't know about the guns? A Right. As we were taking off the handcuffs to be brought to jail, he said, wait a minute, Powers there, he don't know nothing about it, or something like that.
Q Did he say anything about Mr. Gaines? A No. I don't believe he said anything about Mr. Gaines.

* * * * * * * *
THE COURT: Did you ever talk to Mr. Phillips again?
THE WITNESS: Well, right after that I asked him another question. I said, are the guns yours, whose are the guns?
THE COURT: What did he say to that?
THE WITNESS: I don't know. They were in the car. He said they were in the car.
THE COURT: That is what he said, I don't know, they were in the car?
THE WITNESS: I don't know, they were in the car. But, oh. Powers here, I forget how he worded it 
THE COURT: That's it. That's the total conversation you had with Phillips about Powers's involvement?
THE WITNESS: No. I had asked him earlier, I asked him, them all, after advising them of their rights, whose guns, who owns the guns? Nobody said anything. I asked, you know, who owns the *90 car, who owns this, who owns that, and I got no response until, I guess, a few hours later when 
THE COURT: All right. You may step down and step out.
On cross-examination by Gaines' attorney Officer Sinopoli testified:
Q Did Phillips indicate that the gun which was in the possession of Mr. Gaines, did he indicate that that was his gun and did he describe it to you? A I recall now as a result  I had found the two guns initially. Then Mr. Phillips said, I asked him if there was anything else in the car when he was in someone else's car in handcuffs ready to be transported, and he said, there's another gun in the car.
Q He said there's another gun in the car? Did he describe it? A No, sir.
Q He didn't  A That is when I then checked Mr. Gaines a little closely while he was seated in the car with me and found another gun.
Q He said it was in the car? A He said there was in  back in the car.
After this testimony was concluded the trial judge ruled Phillips' statement inadmissible, essentially for the reason that it was "equivocal" and not inculpatory as to Phillips, although exculpatory as to defendant Powers. The trial judge stated that Phillips "in no way indicated that he knew anything about the car having the guns in it, and in no way inculpated himself. He was merely making a statement which would be at best interpreted as exculpatory as to Defendant Powers."
In his certification of the proceedings on October 4 the trial judge referred to Gaines' offer of testimony on this point as follows:
At this point a voir dire was requested to determine the admissibility of a certain statement which the defendant, Gaines, claims was made in his presence by Mr. Phillips, the absent co-defendant, at the Police Station shortly after their arrest. The question of fact presented to the court was whether the statement merely exculpated the two defendants or exculpated them by inculpating the declarant, Mr. Phillips. I ruled that the alleged statement was not inculpatory of Mr. Phillips and therefore Rules of Evidence Sec. 63 (10) did not *91 apply. I excluded it also by the application of Rule 4. At the hearing held in order to reconstruct the record both attorneys and Mr. Gaines asserted that their respective recollection was that the language of the alleged statement of Mr. Phillips was inculpatory as well as exculpatory.
Thereafter, a motion was made by Stanley C. Van Ness, Public Defender, signed by Louis R. Vinci, Assistant Deputy Public Defender, seeking "to correct or supplement the record as certified by the court below," to consolidate the appeals and to extend the time for filing briefs. Vinci's supporting affidavit includes the following:
4. The said certified statement refers to a voir dire examination to determine whether testimony of co-defendant Aaron Gaines would be admissible.
5. At trial the court had ruled it was inadmissible and gives the reasons in the letter of May 16, 1974, but that letter does not set forth the proffered testimony, supra.
6. The purpose of this motion is to have the proffered testimony made part of the record.
Officer Sinopoli's testimony concerning the statement of Phillips would have exculpated Powers only, and not Gaines. But, in settling the record, and in prior proceedings (on the application for bail pending appeal, following imposition of sentence) Gaines' trial attorney had contended that Phillips' statement "would have exculpated my client." The brief in support of the motion submitted by Vinci asserted that the trial judge did not state what the proffered testimony of codefendant Gaines would have been, but defense counsel for both Gaines and Powers maintained that "co-defendant Gaines would have testified that co-defendant Phillips told Trooper Douglas Sinopoli, at the police station, that the guns were his (Phillips') and that neither co-defendant Gaines nor co-defendant Powers knew anything about them."
The brief goes on to state that trial counsel for both Gaines and Powers also maintained that Trooper Sinopoli said the same thing on voir dire. However, the transcript *92 of that testimony shows that defense counsel were incorrect, since the statement of Phillips, according to Sinopoli, did not apply to Gaines.
The issue concerning the record was settled by a stipulation contained in a letter dated July 26, 1974 submitted by the office of the Attorney General, Division of Criminal Justice, Appellate Section, signed by Deputy Attorney General Robert Frank. The letter states:
* * * The only portion of the synopsis which is questioned by defendants pertains to the voir dire of defendant Gaines. One of the requests of defendants' motion is to supplement the record by elaborating on this portion of the proceeding. As pointed out in defendants' brief in support of the motion, they feel that the trial court misinterpreted the import of the statement which defendant Gaines claims to have been made by a third co-defendant, Phillips.
It would be impossible to satisfactorily reconstruct the precise testimony. Representing the State, I entered into an agreement with counsel for defendants, Louis R. Vinci, Esq., whereby the version of co-defendant Phillips' statement as testified by State Trooper Sinopoli * * * will be considered identical to the testimony of Gaines.
In Judge Dowden's synopsis of the proceedings he indicated that Gaines' testimony pertained to both him and Powers. The court's evaluation of this testimony was the same as that of Officer Sinopoli, that is, the statement of Phillips was not inculpatory * * * The compromise as outlined above satisfactorily resolves defendants' request to supplement the record.
With this procedural background, we turn to the contentions raised by each defendant in separate appeal briefs.

As to Gaines
Gaines raises four points in his appeal. The first is that reference in the prosecutor's opening statement concerning defendants having "to come forward" to establish that they had a permit or license to carry or possess the handguns constituted reversible error. The trial judge ruled that in his charge to the jury he would deal with the issue of proving the absence of a permit to carry such a weapon, and he did so. We find no error here. State v. *93 Hock, 54 N.J. 526 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); State v. Blanca, 100 N.J. Super. 241, 248 (App. Div. 1968). In the second point complaint is made of comments by the prosecutor in summation concerning inferences of guilt from the conduct of the three men on the night in question. We find this point also lacking in merit. The third point concerns the question of merger of the offenses arising out of "a single criminal episode." This point will be dealt with later.
Lastly, counsel asserts that he is disadvantaged by the lack of a complete trial transcript and cannot discharge his responsibility to his client. The proceedings for certification of the record demonstrate that only one problem resulted from the lack of a transcript for October 4. It is not meaningful, therefore, for designated defense counsel on appeal to state that he cannot effectively discharge his duty without saying in what way the absence of a transcript has hampered his performance. This sort of generalized claim of a deprivation of substantial rights is an ill-advised and improper mode of appellate practice. See Winston v. So. Plainfield Bd. of Ed., 125 N.J. Super. 131, 144 (App. Div. 1973), aff'd 64 N.J. 582 (1974). As noted above, the single problem concerning the statement attributed to Phillips was resolved by stipulation, and no argument has been directed to that issue on this appeal.
Defendant Gaines was convicted for possession of two handguns which were found on the rear floor of the car, as charged separately in the first and second counts of the indictment. He was also convicted of possession of the silencer, as charged in the fourth count, and of a revolver, found in his pocket, as charged in the fifth count. Citing, among other authorities, State v. Jamison, 64 N.J. 363 (1974), and State v. Hill, 44 N.J. Super. 110 (App. Div. 1957), Gaines now contends that the imposition of four separate sentences, although concurrent, is improper, since there was but one criminal episode. The State concedes that the first and second counts charge but one offense, since *94 the firearms were possessed at the same time in one automobile without a permit, contrary to N.J.S.A. 2A:151-41. The State contends that possession of the silencer is a separate offense, charged under a different statute, N.J.S.A. 2A:151-14. The State also contends that defendant's possession of the revolver "on or about [his] clothes or person" without a permit is a separate offense from possession "in any automobile," although proscribed by the same statute, N.J.S.A. 2A:151-41.
N.J.S.A. 2A:151-41 provides in pertinent part as follows:
Except as hereinafter provided, any person who carries, holds or possesses in any automobile, carriage, motor cycle or other vehicle, or on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area:
a. A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter; or
b. A rifle or shotgun without first having obtained a firearms purchaser identification card in accordance with the provisions of this chapter; or
c. Any dangerous instrument * * * is guilty of a high misdemeanor.
The statute proscribes the possession of a gun, without a permit; in motor vehicles or on one's person, or in any other place in a public area. Since N.J.S.A. 2A:151-44 provides that one permit to carry a pistol or revolver "shall be sufficient for such revolvers, pistols or other firearms as the applicant may possess" (see State v. Kaufman, 118 N.J. Super. 472, 475 (App. Div. 1972), certif. den. 60 N.J. 467 (1972)), we are satisfied that the crime of possessing at one time in one motor vehicle several revolvers, without a permit, was intended by the Legislature to be a single offense. Cf. State v. Butler, 112 N.J. Super. 305, 307 (App. Div. 1970) (possession of heroin and marijuana, at one time, both defined as narcotics, in violation of N.J.S.A. 24:18-4, held to be one offense). Compare Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); United States v. Carty, 447 F.2d 964 (5 Cir.1971), with United States v. *95 Tarrant, 460 F.2d 701 (5 Cir.1972); Sanders v. United States, 441 F.2d 412 (10 Cir.1971), cert. den. 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971). Thus, we merge the convictions and sentences on the first and second counts.
The next question is whether Gaines' carrying a gun on his person (in his clothing) and his constructive possession of two guns in the automobile constitute one crime. The general intent of the Legislature was to prohibit the carrying or possession of a gun or guns in any public area or place without a permit, in a vehicle or on one's person or in one's clothing or "otherwise." In the case at hand there was evidence to show that Gaines had the gun in his pocket when he exited from the vehicle and it was found in his pocket some time thereafter. In this circumstance we find a sufficient factual distinction between the possession of guns in a motor vehicle and the possession of a gun on one's person outside of the motor vehicle to reject the contention that a single criminal episode or transaction occurred.
Distinct and different dangers may be envisioned in keeping a gun in a vehicle as compared with carrying a gun on one's person. We discern a sufficient legislative interest in prohibiting both forms of conduct separately, although a possessory offense is involved in each case. In State v. Davis, 68 N.J. 69, 342 A.2d 841 (1975), the Supreme Court stated, with reference to the separate crimes of possession and distribution of the same heroin, that the Legislature may "split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately." Cf. State v. Juliano, 52 N.J. 232, 235 (1968). Therefore, we conclude that Gaines was properly convicted of the offense charged in the fifth count in addition to the offense charged in the first two counts.
Lastly, we find patently unmeritorious the contention that possession of a silencer is the same offense as possession of a handgun without a permit. Not only are silencers different from handguns, but possession of silencing or muffling devices is absolutely prohibited. N.J.S.A. 2A:151-14. The *96 licensing provisions and exceptions applicable to pistols and other weapons do not apply to silencers. N.J.S.A. 2A:151-43 and 44.

As to Powers
Three points are raised on the appeal by Powers. The first is that the court improperly excluded the statement of Phillips which was exculpatory of Powers. The second is that the possession of two handguns constituted one criminal episode and Powers should not have been convicted and sentenced for two separate crimes. (This point is governed by our disposition of the same point, above, as to Gaines). The third point is that the court improperly denied defendant's motion to suppress.
The motion to suppress was heard before evidence was taken in the trial proper. There was no warrant. Testimony offered by the State showed that Trooper Sinopoli was alone when he stopped the vehicle for speeding. The trooper testified that upon approaching the vehicle he detected an odor of marijuana, and when he ordered the occupants out of the vehicle they showed signs of being under the influence of a drug, there being no odor of alcohol present. The officer initially placed them under arrest for being under the influence of a controlled dangerous substance. N.J.S.A. 24:21-20(b). The trooper frisked defendants and found Gaines in possession of brown envelopes containing green vegetation which appeared to be marijuana and a pipe that was still warm. (The trooper testified that at this time he also found the revolver in Gaines' jacket pocket, but other evidence suggests it was found later.) Two guns and a silencer were found in a search of the vehicle, as well as a box of ammunition and more marijuana on the rear floor of the vehicle. Defendant Powers, who testified on the motion to suppress, stated that an unopened $3 bag of marijuana was found in his pocket.
The trial judge found the trooper's testimony credible and denied the motion. There was ample evidence to *97 justify a finding of probable cause for the arrest of defendants. The search of the persons as well as the subsequent search of the vehicle, incident to that arrest, were lawful. Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Boykins, 50 N.J. 73, 77 (1967); State v. Cook, 47 N.J. 402, 414 (1966); State v. Fioravanti, 46 N.J. 109, 122-123 (1965), cert. den. 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed. 2d 440 (1966).
We now return to the statement of codefendant Phillips which the trial judge found exculpatory as to Powers, but not inculpatory as to Phillips. The trial judge ruled that the statement was not adverse to the interest of Phillips and was not admissible under Evid. R. 63(10).
Phillips' initial statement, that Powers knew nothing about the guns, implied, in the circumstances, that he himself knew something about the guns, of their origin or their existence, which tends toward proving the charge of possession against him. Since they were in the rear of the car, on the floor and under a towel, for Phillips to have said, credibly, that Powers knew nothing of the guns, implied that Phillips knew that the guns were concealed in the car without Powers' knowledge. In State v. Davis, 50 N.J. 16, 28-29 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968), a murder case, the statement of defendant that the driver of the car in which defendant was captured "didn't have anything to do with it," was held admissible on the theory that in volunteering to protect the driver defendant "inferentially indicated his own involvement." Cf. State v. Thompson, 59 N.J. 396, 408-409 (1971). Later, when asked whose guns they were, Phillips said he didn't know, but he also said that "they were in the car." He even said there was another gun in the car. Certainly, these were damaging admissions. There can be no doubt that the statements were admissible under Evid. *98 R. 63(10), when offered by a defendant in a criminal case. See State v. Jamison, supra, 64 N.J. at 378; State v. Thompson and State v. Davis, supra. We conclude, therefore, that the trial judge erred in excluding this evidence.
The State argues that not all statements which prove to be against a declarant's interest are admissible, but, rather, that the statement must have "so far subjected him to a civil or criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true." Evid. R. 63(10); cf. State v. Thompson, supra, 59 N.J. at 408-409. In the context of this case, however, Phillips' statements that Powers knew nothing about the guns and that they were in the car, although he denied knowing whose they were, were very damaging. Phillips must have understood that the statements were damaging to himself, since he was the driver of the car, had just been arrested and had just received Miranda warnings. The probative value in exonerating Powers may be questioned, especially in a case where Gaines later testified that Powers passed him a gun (although the credibility of Gaines was in issue); but the incriminatory significance as to Phillips is very clear.
Powers did not testify, and this was the one important piece of evidence which he sought to introduce. While its probative value is disputed  the State contends that Phillips could not competently state that Powers did not know the guns were in the car  Powers was entitled to place this evidence before the jury. The value to Powers is apparent even if the statement had been primarily inculpatory as to Phillips. Powers had the right to argue that he was lying down on the back seat, as Gaines testified; that there was no direct evidence showing that he knew the guns were on the floor, under a towel, and that Phillips had probably placed them there, without Powers' knowledge, since Phillips admitted knowing they were in the car. Proof that Phillips admitted knowing the guns were in the car *99 may or may not have persuaded the jury toward the view that Powers did not know they were there.
Accordingly, we cannot say with certainty that this evidence was of little probative value and that its exclusion worked no prejudice to Powers. See State v. Jamison, supra, where the court said:
A confession by another is of such probative importance in a criminal trial that its exclusion * * * has been held a denial of the defendant's due-process right to a fair trial. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). [64 N.J. at 378]

Conclusion
The convictions of Gaines on the first and second counts are merged into one conviction and sentence, and his convictions on the fourth and fifth counts are affirmed. An amended judgment of conviction shall be entered by the trial judge forthwith.
The conviction of Powers is reversed and the case remanded for retrial.
FRITZ, J.A.D. (dissenting).
I am in complete agreement with the opinion of the majority except for their resolution of the issue with respect to the Phillips statement and the reversal and remand which followed. As to these I am unwilling to say that the trial judge abused his discretion in rejecting the evidence. Therefore I would affirm the Powers conviction. Dolan v. Newark Iron & Metal Co., 18 N.J. Super. 450, 455 (App. Div. 1952).
As I view it, even were the proffered evidence not hearsay and not subject to exclusion on that account, the determination to exclude that evidence below might well be justified as one under Evid. R. 4 (and a plethora of cases which announced such a rule of law prior to its promulgation as Evid. R. 4), specifically called into play by the judge. While a trial judge should indeed be careful in the application of *100 that rule, the matter does rest within the sound discretion of the judge and reversal should not follow except for abuse of that discretion. Wimberly v. Paterson, 75 N.J. Super. 584, 608-609 (App. Div. 1962), certif. den. 38 N.J. 340 (1962). Not only is it my opinion here that the trial judge did not go wide of the mark, but I believe that his rejection of the evidence was a sound exercise of that discretion. The speculation invited by the repetition of a statement uttered by one not even available for process to compel him to testify, which statement purports to advise as to the state of mind of another, is, in my judgment, amply truth diverting to commend its exclusion.
More significantly, as I see it, matters relating to the purpose of the hearsay rule sanction the exclusion of the evidence. The majority, contrary to the determination of the trial judge, contrives in order to assert that the Phillips statement was one against interest, and therefore admissible hearsay. While the rationale employed in that effort cannot be said by any means to be unreasonable (though I myself do not subscribe to it), I fail to see what there is about that fact that makes a contemporaneous but disassociated and entirely separable noninculpatory statement less invidious hearsay than the latter would be if it appeared all by itself. And no one will argue that had Phillips simply said something to the effect that Powers did not know that the weapons were in the car, without more, such a statement would have been inadmissible hearsay. In a word, that which would make Phillips' statement with respect to his knowledge that the weapons were in the car admissible hearsay is the likelihood of truth springing from the trouble into which such a statement might bring Phillips. The same exprobration cannot reasonably be associated with Phillips' statement relating to Powers' knowledge. I do not believe that the proximity of those statements in point of time should destroy the historically sound concern respecting the doubtful quality of hearsay testimony.
I would affirm.