272 N.J. Super. 51 (1994)
639 A.2d 343
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MANUEL IZAGUIRRE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 8, 1994.
Decided March 25, 1994.
*52 Before Judges SKILLMAN, KESTIN and WEFING.
*53 Susan L. Reisner, Acting Public Defender, attorney for appellant (Charles H. Landesman, Designated Counsel, of counsel and on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Marcy H. Geraci, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant was charged with and convicted of murder and possession of a weapon for unlawful purpose. The convictions were merged and defendant was sentenced to a term of life imprisonment with a thirty-year period of parole ineligibility. A $30 VCCB penalty was also imposed.
On appeal, defendant raises the following issues:
POINT I DEFENDANT'S MOTION FOR A NEW TRIAL BECAUSE OF THE DESTRUCTION OF THE COURT REPORTER'S STENOGRAPHIC NOTES OF THE TRIAL WAS ERRONEOUSLY DENIED. DEFENDANTS CONVICTIONS SHOULD BE VACATED AND A NEW TRIAL SHOULD BE ORDERED BECAUSE OF THE LACK OF A FULL TRANSCRIPT OF THE TRIAL.
POINT II DEFENDANT'S CONVICTION FOR MURDER MUST BE VACATED AND REMANDED FOR A NEW TRIAL BECAUSE THE TRIAL JUDGE REFUSED TO GIVE THE JURY A GUIDO CHARGE WITH RESPECT TO THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER.
POINT III THE TRIAL COURT IMPROPERLY ADMITTED INTO EVIDENCE TESTIMONY PERTAINING TO PRIOR BAD ACTS OF THE DEFENDANT UNDER EVIDENCE R. 55.
POINT IV THE TRIAL JUDGE FAILED TO GIVE THE JURY A PROPER LIMITING INSTRUCTION WITH RESPECT TO TESTIMONY PERTAINING TO PRIOR INCIDENTS OF PHYSICAL CONFRONTATION BETWEEN THE DEFENDANT AND HIS WIFE. (NOT RAISED BELOW).
POINT V DEFENDANTS CONVICTIONS SHOULD BE VACATED BECAUSE THE STATE USED AN INTERPRETER EMPLOYED BY THE DEFENDANT TO INTERPRET A PSYCHIATRIC INTERVIEW OF DEFENDANT CONDUCTED BY A PSYCHIATRIST EMPLOYED BY THE STATE. USE OF THIS INTERPRETER DEPRIVED DEFENDANT OF MEANINGFUL ENJOYMENT OF HIS RIGHT TO EFFECTIVE REPRESENTATION AND ASSISTANCE OF COUNSEL.
*54 On October 26, 1990, less than two weeks after trial was concluded, the trial court was informed that the court reporter's stenographic notes of the trial could not be located. Based on information available to her, Judge Wecker concluded that these notes had been inadvertently destroyed. Promptly, and with the cooperation of trial counsel, she embarked upon developing a plan for reconstructing the record.
On November 1, after short notice, Judge Wecker convened an on-the-record conference with the attorneys who had tried the case, Assistant Prosecutor Ann Rubin and Assistant Deputy Public Defender Vernon Clash. The procedures to be used in reconstructing the record were established at that conference. Each participant's notes of the trial proceedings were marked for identification and returned to the author.
The sentencing proceeding, initially scheduled for November 30, was held on December 14. Defendant's motion for a new trial based, inter alia, on the absence of a verbatim record of the trial, was denied and sentence was imposed. In ruling upon that aspect of the motion for a new trial which was based upon asserted limitations imposed on the defense by the absence of a verbatim record, Judge Wecker noted that motions for new trials are typically made and resolved before a verbatim transcript has been produced.
During a period of time following the first reconstruction conference, each attorney prepared a reconstruction of the trial proceedings from her or his notes and memory.[1] After this phase of the project was completed, Judge Wecker gave each attorney a copy of her trial notes, including jury charges, amounting to 283 pages. Ms. Rubin then annotated her copy of the judge's notes by making additions or corrections based upon her own notes and reconstruction. These annotated notes were separately marked for identification. The annotated copy of the judge's notes was *55 then given to Mr. Clash who made further annotations by way of additions or corrections based upon his own notes and reconstruction. The respectively annotated notes were then marked for identification.
On four days in February 1991, the judge and both counsel,[2] went through all of the notes and annotations in further on-the-record proceedings. Corrections and additions were made, and Judge Wecker dictated what was agreed to have occurred. Opportunity was afforded for counsel's disagreements to be noted on the record. The judge then edited the transcript of the February conferences in order to produce a certified record of the trial "in readable form," totalling some 240 pages. Twelve appendices were added including jury questionnaires, the judge's text of various rulings, charges and instructions which she had used, additional notes from Ms. Rubin on the respective openings of counsel, case citations used by the judge in making a particular ruling, the verdict sheets, and the evidence list. Counsel were given the opportunity to attach appendices highlighting any differences they might have with the judge's certified record.
The prompt action of the trial judge and counsel in developing a reconstructed record while matters were still fresh in each participant's mind was commendable, and the diligence and seriousness of purpose which characterized their efforts was exemplary. The trial in this matter had consumed all or portions of thirteen separate days between September 25 and October 15, 1990. It was no small task to reconstruct such a matter, and the promptness *56 with which it was undertaken, along with the procedures used, tends to suggest, in the absence of particularized claims of inaccuracy, State v. Gaines, 147 N.J. Super. 84, 93, 370 A.2d 856 (App.Div. 1975), aff'd sub nom., State v. Powers, 72 N.J. 346, 370 A.2d 854 (1977), that the reconstruction reflects reality as faithfully as fresh memory permitted. Compare State v. Smith, 84 N.J. Super. 452, 456-59, 202 A.2d 461 (App.Div.), certif. denied, 43 N.J. 270, 203 A.2d 720 (1964), in which we held the requirements of due process to have been met by a partially reconstructed record of a trial held almost four years before the reconstruction was accomplished. Id. at 459, 202 A.2d 461. See also State v. Gaines, supra.
Defendant argues that the situation before us, in which the stenographic notes of the entire trial were lost, is materially different in the due process sense from the instances occurring in Smith and Gaines, where only portions of the trials needed to be reconstructed. We do not perceive that a per se difference exists because of the quantity of the record required to be reconstructed. See State v. Kozarski, 143 N.J. Super. 12, 16, 362 A.2d 598 (App. Div.), certif. denied, 71 N.J. 532, 366 A.2d 687 (1976). See also State v. Parisi, 181 N.J. Super. 117, 120, 436 A.2d 948 (App.Div. 1981).
The concept of due process of law includes a guaranty of fair trial. Weiss v. United States, ___ U.S. ___, ___, 114 S.Ct. 752, 761, 127 L.Ed.2d 1, 15 (1994) (quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955)); State v. Savage, 120 N.J. 594, 628, 577 A.2d 455 (1990) (quoting State v. Morriggi, 15 N.J. Super. 479, 481, 83 A.2d 612 (App.Div. 1951)). The absence of a verbatim record does not render a trial unfair; it merely raises a question concerning fairness that must be addressed. State v. Smith, supra, 84 N.J. Super. at 456-59, 202 A.2d 461. If it turns out that the stenographic notes or electronically taped record of a trial needed for appeal or other valid purpose have been lost or destroyed, and the trial court, upon inquiry, determines that the loss or destruction was accidental or innocent, *57 as occurred here, it becomes the duty of the trial court as a matter of due process entitlement of the parties to reconstruct the record in a manner that, considering the actual circumstances, provides reasonable assurances of accuracy and completeness. Id. at 456, 202 A.2d 461. The procedure so thoughtfully crafted and implemented by Judge Wecker was manifestly designed to achieve that goal. The extensive participation of Ms. Rubin and Mr. Clash was fully in keeping with their obligations as officers of the court as well as trial advocates. The reconstructed record before us, as the product of the three participants' substantial effort and meticulous attention, bears every earmark of one that is as accurate and complete as circumstances permitted. In the absence of any argument that the reconstruction or any portion of it is not a reasonably accurate and complete portrayal of what occurred at trial, we conclude that the due process interests of the parties have been satisfied.
Defendant's further argument of particularized prejudice concerning his inability to make satisfactory showings on appeal from the reconstructed record are unpersuasive. We discern nothing on the face of the reconstructed record or in the procedures used to develop it that suggest otherwise.
Defendant also argues that his convictions were tainted because the same interpreter was used for his pre-trial interviews with his own psychiatrist and with the State's psychiatrist in connection with a potential diminished capacity defense. Although it is preferable in such circumstances that different interpreters be used, we understand that situations will arise in which use of the same interpreter cannot reasonably be avoided. In the absence of a particularized showing of harm, such as breach of confidentiality, State v. Loponio, 85 N.J.L. 357, 88 A. 1045 (E. & A. 1913), use of the same interpreter by the State and the defense does not, by itself, constitute a basis for invalidating a conviction. Cf. State ex rel. R.R., 79 N.J. 97, 116-21, 398 A.2d 76 (1979). In this case, as a matter of foresight at the time, there was no significant potential for harm and none appears to have been *58 inflicted. Interpreters perform a ministerial duty, to translate accurately and precisely everything that is said to or by participants in the session requiring a translator's services. This is a fact that, if not obvious, is easily explained to a defendant or any other person involved in the process.
We conclude that there was no error in the trial court's denial of defendant's pre-trial motion to strike the testimony of the State's psychiatrist on the issue of diminished capacity, and since the psychiatrist did not testify, the issue is moot. We agree with the trial judge that defendant's assertion of prejudice did not ring true. He argued that the circumstances he faced induced him to disavow the factual details for his diminished capacity defense as previously furnished to his psychiatrist. It was defendant's contention that when, upon entering the room in which his interview with the State's psychiatrist was to be conducted, he saw the same person who had translated his interview with the defense psychiatrist, he felt that the interpreter was working with the State's psychiatrist against defendant's interests. This, defendant asserts, caused him to disavow his previously given story. Defendant also argues that the circumstances lessened his ability to communicate with his attorney. We are in substantial agreement with the reasons given by the trial judge for rejecting these arguments.
We regard the remaining issues advanced by defendant to be clearly without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Also during this interval, Judge Wecker held informal conferences with counsel in an effort to monitor the progress of the reconstruction project.
[2] Defendant was present throughout the first of these four days, February 6, 1991. As the second session commenced on February 7, defendant made known through counsel that he no longer wished to attend the reconstruction sessions. Judge Wecker attempted to engage in a colloquy with defendant to be certain that he appreciated the purpose of the reconstruction sessions. Defendant was uncooperative. Judge Wecker then reviewed the need for and purpose of reconstruction, advising defendant that the process would proceed with or without him. When defendant insisted on returning to state prison, Judge Wecker ordered him to be so returned. Consequently, the remaining reconstruction sessions were held in defendant's absence.