**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1763-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMIE CATELLI,

    Defendant-Appellant.

_____

Argued February 5, 2024 – Decided April 24, 2024

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 22-006.

John Menzel argued the cause for appellant.

Melinda A. Harrigan, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Melinda A. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant Jamie Catelli appeals from the Law Division's January 3, 2023 order denying her motion to withdraw her guilty plea. Following our review of the record and the applicable legal principles, we affirm.

I.

In December 2015, defendant was charged with driving while intoxicated ("DWI"), N.J.S.A. 39:4-50; reckless driving, N.J.S.A. 39:4-96; and failure to install an interlock device, N.J.S.A. 39:4-50.19(a). In January 2016, defendant appeared in court and informed the municipal court judge she was retaining private counsel, and the matter was adjourned to March 2016.

Lawrence E. Popp, Esq., filed a notice of appearance in mid-January 2016 and entered a plea of not guilty on defendant's behalf. In February 2016, Popp advised the court defendant was participating in an out-of-state substance abuse program and would not be available to appear in court in March 2016 as scheduled, as her projected discharge date was in May 2016. The March 2016 pretrial conference was subsequently adjourned. During a July 2016 pretrial conference, the municipal court noted the case was "getting quite old," observing defendant's arrest was in December 2015.

On August 9, 2016, trial commenced. Trooper Diego Restrepo of the New Jersey State Police testified that on December 23, 2015, at 2:05 a.m., he

2

responded to a single-vehicle accident in Millstone. When he arrived at the scene, he found defendant unresponsive and sitting in the driver's seat with the motor running and the driver's door opened. EMS arrived and administered Narcan. When defendant regained consciousness, Trooper Restrepo observed she was disoriented, had slurred speech, and her breath smelled of alcohol. He later noticed a restriction on defendant's driver's license requiring an interlock device, which had not been installed.

Defendant was transported to CentraState Hospital, where Trooper Restrepo advised her of her Miranda[1] rights. Defendant stated she was on her way home and swerved to avoid hitting a deer, but later admitted to drinking three glasses of wine and two shots of Fireball whiskey. She also indicated she had taken Klonopin, a prescribed medication, earlier that day. Defendant signed a consent form and provided a blood sample. A nurse drew the blood in Trooper Restrepo's presence. Trooper Restrepo testified he labeled the blood sample and transported it back to State Police headquarters. When the municipal prosecutor sought to move the certified lab report into evidence, defendant objected on the basis no witness could authenticate it. The municipal court judge reserved her decision on the admission of the report until the State rested its case.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1763-22

The trial was scheduled to continue on October 4, 2016. However, on September 30, 2016, John Novak, Esq., sent a letter and substitution of counsel to the court advising he would now be representing defendant, but would not be available on the next scheduled trial date. Novak was also the mayor of Barnegat and had to attend a township committee meeting on that date. He requested to appear on October 18, 2016, for a conference "in an attempt to reach a disposition" with the municipal prosecutor. Novak stated he would be prepared to continue the trial on November 22, 2016, if the case was not resolved at the conference.

Pursuant to the Monmouth County Assignment Judge's directive, the municipal court judge requested approval from the presiding municipal court judge for the adjournment because the case was more than six months old. The adjournment request was denied. Novak was informed, and on October 4, 2016, the trial continued with Popp representing defendant.

The State's next witness was the nurse who drew defendant's blood. At a break during the course of the nurse's testimony, defendant agreed to plead guilty. She entered a guilty plea to DWI and was sentenced as a second DWI offender to the mandatory minimums: two-year driver's license suspension; installation of an ignition interlock device for one year; forty-eight hours at an

Intoxicated Driver Resource Center; and thirty days of community service.[2]
Defendant did not appeal from the conviction.[3]

In November 2020, David P. Schroth, Esq., requested transcripts from the proceedings. In January 2021, the municipal court informed Schroth the October 4, 2016 recording was not available.

In January 2022, Schroth moved to withdraw defendant's guilty plea, asserting she was denied her Sixth Amendment right to counsel of her choice. In February 2022, the municipal court denied the motion. In March 2022, defendant moved for reconsideration, which was withdrawn when defendant retained her current counsel. Thereafter, defendant appealed from the municipal court's denial of her motion to withdraw her guilty plea.

In June 2022, the Law Division judge sua sponte remanded the case to the municipal court to reconstruct the record pursuant to Rule 3:23-8(a) because the

---

[2] The court also imposed a $506 fine, $33 in court costs, $75 sanction, $50 assessment for the Victims of Crime Compensation Office, and a $225 DWI surcharge.

[3] In June 2017, defendant, represented by Popp, appeared in court because she failed to perform the community service portion of her sentence. She stated she was not "cleared" by her doctor to perform community service. The court ultimately vacated that part of her sentence and instead ordered defendant to confirm her participation in a substance abuse program.

A-1763-22

October 4, 2016 guilty plea recording was unavailable. The Law Division judge directed the municipal court to address the denial of defendant's request to adjourn the trial and defendant's guilty plea.

On August 29, 2022, the municipal court judge reconstructed the record. She discussed defendant's arrest, first appearance, the pretrial conferences, and the first day of trial. The municipal court judge further noted the matter was continued to October 4, 2016. Additionally, as recounted by the Law Division judge:

> The [municipal court] judge recalled . . . Novak's request to substitute for . . . Popp and indicated through her staff that she would consider permitting the substitution if Novak "would . . . get up to speed quickly and . . . continue the trial." When . . . Novak indicated that he could not proceed on October 4 . . . because of a conflict and proposed resuming the trial in November, [the municipal court judge] noted that because the matter was a DWI and had been pending for more than six months, it could not be adjourned without the approval of the [p]residing [j]udge of the [m]unicipal [c]ourts. [The municipal court judge] filled out a form requesting permission to adjourn the matter and sent it to [the presiding judge]. [The presiding judge] denied the adjournment request and . . . Novak and . . . Popp were notified that trial would continue on October 4, 2016.
>
> On October 4, 2016, . . . Popp continued to represent defendant. The State called the nurse who drew defendant's blood. After the nurse's direct examination concluded and before cross-examination

> began, . . . Popp requested a brief recess. After conferring with his client and the prosecutor, . . . Popp advised the court that there would be a guilty plea with an agreement by the State that defendant would be sentenced to the mandatory minimums.

The municipal court judge further recalled defendant's guilty plea was "voluntary," explained it is a long process putting guilty pleas on the record, and she felt "quite confident that it was a thorough guilty plea." The municipal court judge noted she "ha[d] been doing this a very long time" and she "ask[s] the same questions." She also recalled the plea was based on defendant's view that it was better to plead than continuing with trial and facing possible jail time. She further observed she remembered the trial and the "general totality of it, but . . . [not] very specifically what [defendant] said." However, she noted she asks the "exact same questions every time" based on her "custom." The municipal court judge also remembered receiving a letter from defendant, about a year after sentencing, thanking her.

The Law Division judge conducted a de novo review of the case based on the municipal court records and the municipal court judge's reconstruction of the October 4, 2016 record.[4] He initially addressed the timeliness of defendant's motion. He noted defendant's motion to withdraw her guilty plea was filed in

---

[4] The other recordings were available.

January 2022, more than five years after her guilty plea, which was never appealed. The Law Division judge observed defendant failed to assert she was not guilty of DWI. Moreover, she did not dispute the municipal court judge's finding she entered the guilty plea to avoid a more severe sentence. He concluded defendant failed to show manifest injustice under Rule 7:6-2 and dismissed the motion as untimely. Notwithstanding the Law Division judge's finding defendant's motion was untimely, he addressed defendant's remaining arguments that: the municipal court judge erred in failing to allow an adjournment for substitution of counsel; and the municipal court's failure to maintain its records required a vacation of her guilty plea.

Defendant argued the municipal court judge initially agreed to adjourn the case to accommodate the substitution of counsel, but ultimately denied her request. However, the Law Division judge found the municipal court judge "agreed to allow the substitution on the condition . . . Novak was prepared to proceed on [October 4, 2016]," but Novak was not prepared to proceed on that date. Rather, Novak proposed adjourning the trial to negotiate a disposition and then continue with trial on November 22, 2016, if negotiations failed. The Law Division judge noted this would have postponed the trial to a date nearly one year after defendant's arrest. Further, defendant was motivated to plead guilty

in exchange for receiving mandatory minimums for a second DWI and avoiding "harsher penalties."

The Law Division judge further addressed the factors enumerated in State v. Slater, 198 N.J. 145, 157-58 (2009). Under factor one, he found defendant did not assert a colorable claim of innocence. Regarding the second factor, he noted defendant's claim the plea was not knowing, intelligent, or voluntary was not supported by the reconstructed record. Additionally, he found defendant's claim of prejudice regarding the municipal court judge's denial of a mid-trial adjournment to change counsel was without merit. Factors three and four favored the State because the existence of a plea agreement and the corresponding prejudice to the State both "weigh heavily against defendant."

The Law Division judge was unconvinced defendant's guilty plea should be vacated because the municipal court failed to maintain the October 4, 2016 recording. He found the municipal court judge "engaged in a meticulous review of the municipal court file and her notes before providing an exceedingly detailed reconstruction of defendant's guilty plea and the events leading up to it."

The Law Division judge noted defendant did not dispute the municipal court judge's reconstruction of the record, which he found supported the finding

defendant was not "coerced" into pleading guilty and undermined defendant's "current claim" she felt pressured into pleading guilty. Additionally, the municipal court judge recalled defendant wrote to her a year after her guilty plea and said "this was the best thing that happened to her, she got her life turned around and that was facilitated by her pleading guilty to the charge." The Law Division judge noted "[t]hese are not the words of someone who was 'coerced' into pleading guilty."

The Law Division judge found that Rule 3:23-8(a) "anticipates" there may be "occasional problems" with our municipal courts' "recording and transcription system," and the remand procedure "functioned as intended" with the municipal court providing a "thorough reconstruction of the record." "Informed by that reconstruction," he concluded there were no grounds to vacate defendant's guilty plea.

II.

Defendant raises the following points on appeal:

POINT I

THE MUNICIPAL COURT'S REFUSAL TO PERMIT DEFENDANT'S RETAINED COUNSEL OF CHOICE TO CONTINUE HER DEFENSE AT TRIAL WAS STRUCTURAL ERROR REQUIRING VACATION OF HER GUILTY PLEA.

10

POINT II

THE MUNICIPAL COURT'S DENIAL OF DEFENDANT'S ADJOURNMENT REQUEST SO THAT RETAINED COUNSEL OF HER CHOICE COULD CONTINUE HER DEFENSE AT TRIAL WAS AN ABUSE OF DISCRETION CAUSING A MANIFEST INJUSTICE WITH DENIAL OF THE CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE.

POINT III

THIS COURT SHOULD VACATE DEFENDANT'S CONVICTION BECAUSE THE MUNICIPAL COURT'S FAILURE TO MAINTAIN RECORDS REQUIRED BY COURT RULE DEPRIVED DEFENDANT OF DUE PROCESS AND DEPRIVED THIS COURT OF THE ABILITY TO CONDUCT [AN] ADEQUATE REVIEW.

POINT IV

THE RECONSTRUCTED RECORD FAILS TO ESTABLISH WHETHER THE MUNICIPAL COURT REASONABLY EXERCISED ITS DISCRETION IN DENYING THE DEFENSE ADJOURNMENT REQUEST OR WHETHER THE PLEA COLLOQUY WAS SUFFICIENT TO SUPPORT THE GUILTY PLEA.

POINT V

APPLYING THE FACTORS UNDER . . . SLATER, THE RECORD FAILS TO ESTABLISH WHETHER OR HOW DEFENDANT ASSERTED HER INNOCENCE OR WHETHER THERE WAS A PLEA AGREEMENT WHILE THE PRESENCE OF

11

COMPELLING REASONS SUPPORT HER CLAIM
OF A MANIFEST INJUSTICE WARRANTING
VACATION OF HER PLEA.

A municipal court decision is appealed to the Law Division. See R. 3:23-1; R. 7:13-1. "In the Law Division, the trial judge 'may reverse and remand for a new trial or may conduct a trial de novo on the record below.'" State v. Robertson, 228 N.J. 138, 147 (2017) (quoting R. 3:23-8(a)(2)). "At a trial de novo, the court makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings." Ibid. "It is well-settled that the trial judge 'giv[es] due, although not necessarily controlling, regard to the opportunity of the' municipal court judge to assess 'the credibility of the witnesses.'" Id. at 148 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 157 (1964)).

On appeal from the Law Division's decision, our review "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." Ibid. (quoting Johnson, 42 N.J. at 162). "[A]ppellate courts ordinarily should not undertake to alter concurrent findings of fact and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 474 (1999)). Therefore, appellate review of a de novo

12                                                          A-1763-22

conviction in the Law Division following a municipal court appeal is "exceedingly narrow." Locurto, 157 N.J. at 470. However, the trial court's legal rulings are considered de novo. Robertson, 228 N.J. at 148.

A.

Defendant asserts the Law Division judge deprived her of counsel of her choice in violation of the Sixth Amendment. Defendant contends she should not be constrained in the right to have counsel of her choice. She further asserts the municipal court judge agreed through a court administrator to adjourn the matter so she could retain Novak and then reneged, violating her constitutional right to counsel. She claims the municipal court judge's denial of the adjournment request to accommodate Novak constituted a manifest injustice and an abuse of discretion.

Under the Burton[5] factors, defendant argues the length of the requested delay was reasonable and well-defined; this was her first adjournment request; no undue inconvenience was inflicted on anyone; and the court had already accommodated the State by permitting it to proceed to trial with only one witness available. She further asserts the adjournment request was necessitated by her dissatisfaction with her original attorney; her counsel of choice, Novak,

_____

[5] United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978).

was a mayor who had duties outside of her representation; and aside from the minor scheduling conflict, Novak was willing to try her case. Further, denying the adjournment prejudiced defendant and deprived her of her Sixth Amendment right to counsel of choice. She also argues this case had no particular complexity, and there were no other concerns necessitating denial of the adjournment.

"Both the United States Constitution and our New Jersey Constitution grant defendants charged with a criminal offense the right to have the assistance of counsel." State v. King, 210 N.J. 2, 16 (2012). An essential element of this right is "the right of a defendant to secure counsel of [their] own choice." State v. Furguson, 198 N.J. Super. 395, 401 (App. Div. 1985). "However, the right to retain counsel of one's own choice is not absolute . . . ." Ibid. The trial court has "wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar . . . ." United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006) (citation omitted); see also State v. Johnson, 274 N.J. Super. 137, 147-48 (App. Div. 1994).

In addressing a motion to withdraw a guilty plea in the context of a case where the defendant sought an adjournment to retain new counsel, the Supreme Court noted there is an "intersection of the right to the assistance of counsel"

14

and a "defendant's motion for an adjournment." State v. Hayes, 205 N.J. 522, 536 (2011); State v. Miller, 216 N.J. 40, 65-66 (2013). In Hayes, we noted, "[w]hen a defendant applies for an adjournment to enable [them] to substitute counsel, the trial court must strike a balance between its inherent . . . right to control its own calendar and the public's interest in the orderly administration of justice . . . and the defendant's constitutional right to obtain counsel of [their] own choice . . . ." 205 N.J. at 538. The Hayes Court noted, "a trial court's decision to deny a request for an adjournment to permit a defendant to retain counsel of his choice will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" Id. at 537 (quoting State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998)).

In State v. Maisonet, the Supreme Court identified the factors a trial court should consider in assessing a defendant's request for an adjournment to retain counsel of their choice. 245 N.J. 552, 563-64 (2021). Those factors include:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other

counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.

[Ibid. (quoting Furguson, 198 N.J. Super. at 402).]

The Court referred to these as the Furguson or Burton factors. Id. at 564.

Here, the Law Division judge noted the age of the case and the fact there had been a prior lengthy continuance when defendant was seeking treatment. He further observed the municipal court would have permitted Novak's substitution if he was prepared to proceed on October 4, 2016. Instead, Novak wanted to appear for a conference only on October 18, 2016, and if the case did not resolve, he proposed continuing the trial on November 22, 2016. The Law Division judge noted the municipal court judge also conferred with her presiding judge about the adjournment request, given the case's age. He observed this was consistent with Administrative Directive #1-84, Directive on Statewide DWI Backlog Reduction (July 26, 1984) (addressing the timely resolution of DWI matters and directing that such cases be "disposed of within [sixty] days of filing"), coupled with the corresponding Monmouth County directive requiring

16

municipal judges to obtain approval from the municipal court presiding judge for adjournment requests for cases pending more than 180 days.

We conclude the municipal court judge's denial of defendant's request for the appointment of new counsel in the middle of the trial was not a misapplication of its discretion under these particular circumstances. The municipal court retained wide discretion in deciding the motion for substituted counsel and was permitted to consider the trial schedule, directives referenced by the Law Division judge regarding the timely disposition of DWI cases, and the State's interest in proceeding in a timely manner. Moreover, the municipal court had previously granted defendant a lengthy adjournment when she was seeking treatment in Florida. In short, we conclude the Law Division judge did not misapply his discretion.

### B.

Defendant next argues the municipal court should have maintained recordings of its proceedings and that the reconstruction of the record on remand was insufficient. She argues there was not an adequate factual basis for her guilty plea or a basis to determine if the municipal court properly exercised its discretion in denying her adjournment request. See Maida v. Kuskin, 221 N.J. 112, 123 (2015) ("The necessity of providing a record that permits a municipal

17

court judge to find that a guilty plea is knowing and voluntary and that there is factual support for the plea is intended to mirror the protections of R[ule] 3:9-2, which governs the entry of guilty pleas in Superior Court.").  She contends the withdrawal of her plea is the procedurally correct measure where the plea was entered without an adequate factual basis.  See State v. Gregory, 220 N.J. 413 (2015); State v. Perez, 220 N.J. 423 (2015); State v. Tate, 220 N.J. 393 (2015).

Defendant relies on State v. Gale, 226 N.J. Super. 699, 704 (Law Div. 1988), for the proposition that municipal courts may only accept guilty pleas after "exacting requirements" are met.  See also R. 7:6-2(a)(1) ("[T]he court shall not . . . accept a guilty plea without first addressing the defendant personally and determining . . . the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea and that there is a factual basis for the plea.").  Thus, she argues, upon finding an insufficient factual basis to support a guilty plea, the court should "vacate the conviction and allow withdrawal of the guilty plea without any further discussion."  Defendant further argues the missing recording of her plea colloquy constitutes a manifest injustice.  She contends there is no record to review and no sufficient factual basis by which to determine whether the municipal court judge properly accepted the plea.

18

Rule 3:23-8(a)(1) states that where a record is unintelligible, "the court to which the appeal is taken . . . may remand the matter to the municipal court to reconstruct the portion of the record that is defective. If the record below is substantially unintelligible, the matter shall be remanded to the municipal court to reconstruct the entire record . . . ."

"[I]n cases where portions of the trial [are] missing, [the Supreme Court] has placed a duty upon the defendant to show both an exercise of due diligence to correct the deficiency in the record and prejudice from the incompleteness of the record." State v. Bishop, 350 N.J. Super. 335, 347 (App. Div. 2002). The same standard applies where an entire transcript is missing. Ibid. "The absence of a verbatim record merely raises a question of fairness that must be addressed." Ibid. "It does not render a trial unfair." Ibid. "When the verbatim record is lost, it is the duty of the trial judge as a matter of due process to reconstruct the record in a manner sufficient to provide a reasonable assurance of accuracy and completeness." Id. at 347-48 (citing R. 2:5-3(f); State v. Casimono, 298 N.J. Super. 22, 25 (App. Div. 1997); State v. Izaguirre, 272 N.J. Super. 51, 56-57 (App. Div. 1994)).

Here, the Law Division properly remanded this matter to the municipal court to reconstruct the record before reviewing the case de novo and relied on

that reconstruction in denying defendant's motion to withdraw her guilty plea. It noted the municipal court judge "engaged in a meticulous review of the municipal court file and her notes before providing an exceedingly detailed reconstruction of defendant's guilty plea and the events leading up to it." Furthermore, defendant did not "dispute any part of this reconstruction, including [the municipal court judge's] conclusion that defendant agreed to plead guilty to avoid a potential jail sentence . . . and her specific recollection of 'not feeling that [defendant had] been coerced to do so.'"

The municipal court judge also recalled defendant and explained it was her "custom"—given that she had been taking pleas for a "long time"—to go through a "long process getting the guilty plea on the record . . . ." The municipal court judge further referenced defendant's choice to accept a plea rather than facing jail time. Defendant does not assert she expressed any reluctance to the court at the time she pled guilty, nor does she dispute she entered the plea to avoid jail time. The Law Division judge noted this "undermine[d] defendant's current claim . . . she was 'forced to plead guilty' as does [the municipal court judge's] recollection that defendant wrote to her approximately one year [later to] thank[] the judge and stat[ed] that 'this was the best thing that happened to

her [and] got her life turned around.'" He further commented, "[t]hese are not the words of someone who was 'coerced' into pleading guilty."

Additionally, the Law Division judge determined there was sufficient information in the reconstructed record to conclude the municipal court judge properly denied defendant's adjournment request. He observed: defendant had previously received a lengthy continuance when in treatment; Novak was not prepared to proceed with the trial on October 4, 2016; and the municipal court judge complied with the Monmouth County directive by conferring with her presiding judge regarding an adjournment request in a DWI case over 180 days old.

We affirm substantially for the reasons set forth by the Law Division judge. There was ample information provided by the municipal court judge's reconstruction of the record, coupled with the Law Division judge's analysis to support the conclusion concerning the adequacy of the record to assess the guilty plea and denial of the adjournment request.

C.

Defendant also contests the Law Division judge's assessment of the Slater factors. 198 N.J. at 145. Under the first Slater factor, defendant argues the record (including the reconstructed portion) does not reflect whether she

asserted her innocence. Defendant argues the second <u>Slater</u> factor, the nature and strength of the reasons for withdrawal of the plea, was met based on her arguments, including the court's failure to grant an adjournment for her to secure new counsel. Under the third <u>Slater</u> factor, defendant concedes she has a heavier burden when seeking to withdraw a plea entered as part of a plea bargain, but asserts this could not be assessed because "we just don't know" what occurred because the transcript is missing. Under the fourth <u>Slater</u> factor, defendant asserts the withdrawal of her guilty plea would not result in unfair prejudice to the State or unfair advantage to her. She argues "the passage of time is relevant, [but] its effect is less" in this case because it is not an observation-dependent case, but rather it is dependent on her blood alcohol content.

Rule 7:6-2(b) governs plea agreements in municipal courts and provides: "A motion to withdraw a plea of guilty shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice." Similarly, <u>Rule</u> 3:21-1 provides: "A motion to withdraw a plea of guilty . . . shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice."

In <u>State v. Mitchell</u>, our Supreme Court explained why motions to withdraw a plea must be made in a timely manner:

As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable.

[126 N.J. 565, 575 (1992).]

Courts must also recognize "the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation." Id. at 576. Thus, where the application to withdraw a guilty plea is made after sentencing, a defendant must demonstrate that a "manifest injustice" occurred. Slater, 198 N.J. at 158 (citing R. 3:21-1). "[E]fforts to withdraw a plea after sentencing must be substantiated by strong, compelling reasons." Id. at 160. Courts considering post-sentencing motions apply "a more stringent standard" and "weigh[] more heavily the State's interest in finality." State v. McQuaid, 147 N.J. 464, 487 (1997).

In Slater, the Supreme Court delineated a four-factor balancing test to guide courts in exercising their discretion to set aside guilty pleas. 198 N.J. at 157-58. Those factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal

would result in unfair prejudice to the State or unfair advantage to the accused."
Ibid.

The Law Division judge correctly found defendant failed to demonstrate a manifest injustice and that her motion was untimely. We also conclude the Slater factors do not weigh in defendant's favor. Defendant has not asserted a colorable claim of innocence. Her certification does not indicate she advised the municipal court that she was innocent at the time of her plea, and she also does not now suggest that she was innocent of the DWI charge. Further, her reason for wanting to withdraw her guilty plea is not compelling. We are unconvinced the municipal court erred in denying her adjournment to retain counsel as discussed above, and she provides no explanation why she waited over five years after her guilty plea to seek to withdraw the plea.

As to the third Slater factor, the reconstructed record shows there was an agreement with the State, and the municipal court judge noted defendant entered the plea to avoid jail time. Lastly, the withdrawal of defendant's guilty plea, if permitted, would result in unfair prejudice to the State because it would be difficult to prosecute this case several years after defendant's plea, given the State's need to marshal not only witnesses but the physical evidence necessary to try the case.

To the extent that we have not otherwise addressed defendant's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1763-22