STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOHN
LEWIS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 25, 1988—Decided September 23, 1988.

Before Judges KING, GRUCCIO and D'ANNUNZIO.

*Barbara J. Lieberman,* Designated Counsel, argued the
cause for appellant (*Alfred A. Slocum,* Public Defender of New
Jersey, attorney).

*Richard Morton,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KING, P.J.A.D.

The issue in this case is whether the exigent circumstance that evidence of drug dealing might be removed from an apartment justified an entry without a search warrant. This has become a troublesome area of search and seizure law in which courts and judges have disagreed.

As *LaFave* states, "the question is whether the experience to date merits the conclusion that in due course the exception [to the Warrant Clause] will be defined in a way which is understandable by police and which will not result in it being an exception which in effect swallows up the general rule that a warrant is needed to search premises." *LaFave, Search and Seizure* § 6.5(b) at 657 (1987). In this case we conclude that the State has not satisfied its "heavy burden" of proof sufficiently to justify entry into the dwelling area without prior judicial approval.

[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, *see, e.g., United States v. Santana,* 427 *U.S.* 38, 42–43 [96 *S.Ct.* 2406, 2409–10, 49 *L.Ed.*2d 300] (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden,* 387 *U.S.* 294, 298–99 [87 *S.Ct.* 1642, 1645–46, 18 *L.Ed.*2d 782] (1967) (same); *Schmerber v. California,* 384 *U.S.* 757, 770–71 [86 *S.Ct.* 1826, 1835–36, 16 *L.Ed.*2d 908] (1966) (destruction of evidence); *Michigan v. Tyler,* 436 *U.S.* 499, 509 [98 *S.Ct.* 1942, 1950, 56 *L.Ed.*2d 486] (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, *see Santana....*" [*Welsh v. Wisconsin,* 466 *U.S.* 740, 749–50, 104 *S.Ct.* 2091, 2097–98, 80 *L.Ed.*2d 732 (1984).]

*See also Vale v. Louisiana,* 399 *U.S.* 30, 90 *S.Ct.* 1969, 26 *L.Ed.*2d 409 (1970). As in *State v. Kirk,* 202 *N.J.Super.* 28, 34 (App.Div.1985), we wish to make it clear that our decision is

rendered on State constitutional grounds exclusively.[1]

Defendant appeals from the denial of his motion to suppress evidence which led to his conditional guilty plea, *see R.* 3:5–7(d), to the charge of possession of cocaine and to three lesser, non-indictable charges: possession of marijuana under 25 grams, possession of a hypodermic needle, and possession of other narcotics paraphernalia. Defendant was sentenced on January 24, 1986 to a two-year term of probation. A fine of $100 also was imposed.

These are the facts developed from the testimony of the two Newark police officers, Da'Elia and Pilino, at the suppression hearing. At about 10:45 a.m. on February 1, 1984, a Wednesday, an informant that Officer Da'Elia said had proven "very" reliable in the past called the Newark Police Department. The informant said that he wanted to speak to the police about a narcotics dealer. Da'Elia and another officer met with the

---

1.    We wish to be clear that our decision is rendered on State constitutional grounds exclusively, not on federal constitutional grounds. In compliance with the admonition of Justice O'Connor in *Michigan v. Long,* 463 *U.S.* 1032, 103 *S.Ct.* 3469, 77 *L.Ed.*2d 1201, 1214 (1983), we rely on federal precedents for guidance as we would on precedents of any other jurisdiction, not because of any concept of federal constitutional compulsion. *Ibid.* We intend that our decision rest on "bona fide separate, adequate, and independent State grounds," not subject to federal review. *Ibid.* As Justice O'Connor noted in *Long:* "It is fundamental that State courts be left free and unfettered by us in interpreting their state constitutions." *Ibid.*

Art. I, par. 7 of the New Jersey Constitution of 1947 is almost identical in wording to the Fourth Amendment to the federal Constitution. Under our recent cases, we are free to look to our Constitution which on at least four occasions has been construed to afford greater protection to privacy interests than the parallel provision of the federal constitution. *See State v. Hunt,* 91 *N.J.* 338 (1982) (protectible interest in toll billing records); *State v. Alston,* 88 *N.J.* 211 (1981) (standing to challenge search and seizure); *State v. Johnson,* 68 *N.J.* 349 (1975) (consent to search); *State v. Novembrino,* 200 *N.J.Super.* 229 (App.Div.1985) (no "good faith" exception to exclusionary rule). [*Id.* at 35; footnotes omitted.]

"*Long* simply puts the burden of clarification on the state court in advance." *Hart & Wechsler's The Federal Courts and The Federal Systems* (Foundation Press 3 ed. 1988) at 553.

informant at Seventh Avenue and Clifton Avenue in the City of Newark at about 11 a.m. The informant told the officers that a short time before he had been in a small apartment (# 7) at 595 North Sixth Street where he had seen several persons packaging narcotics for imminent distribution. The informant said one person had a gun and the police should get there as soon as possible because the people were getting ready to leave. The only testimony presented about the informant at the suppression hearing was that he had been "very" reliable in the past.

The officers reported this information to their desk sergeant who told them to go right over to Lewis' apartment and attempt to gain entry. The officers went to the defendant's apartment which was one mile away from where they had talked to the informant. There they met with other officers who had been dispatched to participate in the raid. Eight officers in all were at the scene when the raid took place at noon.

Two officers stayed outside the building to cover escape routes. Officer Pilino went inside with five others. He knocked on the door of apartment 7. This is the scenario he described.

Q. [by Prosecutor]. Okay.

A. And I knocked on this apartment 7.

Q. Okay, and what happened when you knocked?

A. I knocked on the door and there was a male voice that answered, Who is it. I'm the one that said—I mumbled something out, it's Tony.

Q. Right. Then what happened?

A. At that point the door opened.

Q. Right.

A. And there was a male there, and at that point he saw that—well, I had a uniform on and *the male behind the door tried to close the door, and I had my foot in the door, I kept it open, and at that point I observed on the kitchen table a glass, a clear bottle which contained a white powder.* [Emphasis added.]

Q. Did you see anything else on the table?

A. Yes, I also saw a gold razor blade.

Q. How far was the front door from where you were to the kitchen table?

A. It was very close, it was—I'd say it was within five feet from me. It was a very small room.

Q. Okay. So that after you saw that, what did you do?
A. Well, at that point when I saw the white powder substance I believed it was narcotics.
Q. Right.
A. And I placed the defendant under arrest.

There is no doubt from Officer Pilino's testimony that he made an entry by holding the door open before he saw the contraband on the kitchen table. *See United States v. Winsor*, 846 *F.*2d 1569, 1572 (9th Cir. *en banc* 1988) (view from threshold after entry demanded held an entry). He also said that from the threshold he saw hypodermic needles and syringes on top of the refrigerator.

The small two-room apartment was then searched. The officers found other narcotics paraphernalia, a .25 caliber automatic pistol, and some ammunition. The judge suppressed all evidence seized in the apartment search except the items which Pilino saw from the threshold on the kitchen table and the refrigerator top, while his foot held the door open. The judge thought that upon defendant's arrest the police should have secured a warrant to search the rest of the apartment. The State has not cross-appealed from this adverse exclusionary ruling.

The judge found the two police officers credible. He thought that exigency excused any attempt to get a search warrant, that the entry was justified, and that since the police officer observed the articles on the kitchen table and the refrigerator in "plain view," this justified their seizure and admission into evidence. But the "plain view" exception to the Warrant Clause does not apply unless they were "lawfully in the viewing area" in the first place. *See State v. Bruzzese*, 94 *N.J.* 210, 237 (1983). As noted, here the entry without a warrant was not justified in the first instance. *Cf. Washington v. Chrisman*, 455 *U.S.* 1, 102 *S.Ct.* 812, 70 *L.Ed.*2d 778 (1982) (officer lawfully in arrestee's room).

As discussed in *LaFave, Search and Seizure*, § 6.5(b) at 656, the problem of entry into the dwelling place without a warrant

because of the exigency that evidence may be removed or destroyed imminently is a difficult one. The problem continues to confront our courts without ready solution. In May of this year a divided panel of the Second Circuit, Judge Oakes dissenting, sanctioned a warrantless entry into a dwelling area in a drug case because of "exigent circumstances." *United States v. Cattouse*, 846 *F.*2d 144 (2d Cir.1988). In his dissent Judge Oakes wrote ominously:

> I am also troubled by the majority's willingness to find exigent circumstances based largely on generalizations about the habits and practice of drug dealers. Relying on the first four factors enumerated in the expressly nonexhaustive [*United States v.*] *Martinez-Gonzalez* [682 *F.*2d 93 (2d Cir.1982)] listing, the majority correctly notes that the sale of PCP is a most serious offense and that drug dealers are frequently armed (though there were no arms involved in this case). The district judge also credited testimony that "narcotics dealers often use lookouts" to warn of possible police activity, which he then used to support the conclusion that the marked buy money might be taken from the apartment by a runner because, as the agents testified, "narcotics sellers often use 'runners'" to transport cash proceeds. So, with the general knowledge that drug dealers often use guns, lookouts, and runners, all that is needed to create exigence is an operation using marked buy money, probable cause, and a strong possibility that the suspect is in the apartment to be entered. Perhaps we should be more forthright and say that the Fourth Amendment's warrant requirement is simply inapplicable in drug buy cases. *See* Kamisar, "Comparative Reprehensibility" and the Fourth Amendment Exclusionary Rule, 86 Mich. L.Rev. 1, 11–32 (1987). Such a rule would be a very small step from where the majority has left us.
>
> I could prolong this dissent. I end it with a sense of futility. To my mind the majority's willingness to expand the exigent circumstances exception is but another sad paragraph in a book that could be entitled *The Erosion of the Fourth Amendment.* And I fear the chapters that have yet to be written. [*Id.* at 149–150.]

*Crosby v. Commonwealth of Virginia*, 6 Va.App. 193, 367 *S.E.*2d 730 (1988) (Judge Barrow dissenting) is another case where a divided appellate panel recently upheld a warrantless entry into a dwelling area under the aegis of exigency.

We are troubled here because no effort was made to secure either a written or telephonic warrant.[2] *See State v. Valencia,*

---

[2]Although formal procedures were not adopted for telephonic warrants until September 10, 1984—after this seizure occurred—the procedure had long

93 *N.J.* 126 (1983); *State v. Apostolis*, 93 *N.J.* 143 (1983). These events took place in the middle of a weekday in central Newark where a number of judges are readily available. We are also troubled by the sparse nature of the alleged probable cause established "after the fact." We are only told in the suppression hearing testimony that the informant had been "very" reliable in the past; no further details were offered. A neutral, detached magistrate could probably have developed some corroborating details for this alleged reliability by a "more thorough and deliberate examination of the factual basis for issuing the warrant." *State v. Valencia*, 93 *N.J.* 126, 135 (1983).

In *United States v. Rubin*, 474 *F.*2d 262 (3d Cir.1973), a well-known case upholding a warrantless entry into defendant's home, a federal agent was in the process of procuring a search warrant when the particular exigency requiring the warrantless entry emerged. The case shows the importance of police efforts to comply with the Fourth Amendment. The Circuit Court said: "Only because exigent circumstances developed about an hour later did it seem necessary to act without awaiting the delivery of the warrant." *Id.* at 270. This attempt to get a warrant before the entry was one of the "circumstances ... sufficiently compelling in tipping the delicate balance in favor of protecting societal interests." *Ibid.*

In *United States v. Aquino*, 836 *F.*2d 1268 (10th Cir.1988), the Circuit Court rather grudgingly upheld a warrantless entry where there was strong evidence of probable cause and exigent circumstances. Telephonic search warrants were "unavailable under applicable local [Colorado] law." *Id.* at 1273 (federal agents were not involved in the seizure). The court made these

---

before been readily available to police in truly exigent circumstances. *See e.g., State v. Liberti*, 161 *N.J.Super.* 575 (App.Div.1978), certif. den. 79 *N.J.* 502 (1979).

pertinent observations concerning the need for the police to use all possible efforts to get a warrant through available procedures:

> Although the police had reason to believe a warrantless entry was necessary, we are distressed by the lack of any evidence in the record that the police ever began the process of procuring a warrant even though a local magistrate was on duty at the time. When Ruebush produced the cocaine, but not before, the police had probable cause to believe that Aquino had illegal drugs in his apartment. Nine officers were directly involved in this operation; any one of them could have been dispatched to the magistrate. Similarly the relevant information could have been radioed or telephoned to the station house where an officer not directly involved in the investigation could have sought a warrant. *Cf. Whiteley v. Warden, Wyoming State Penitentiary,* 401 *U.S.* 560, 568 [91 *S.Ct.* 1031, 1037, 28 *L.Ed.*2d 306] [parallel citations omitted] (1971) (officers may rely on other officers' representation of facts establishing probable cause). No matter how reasonable a warrantless entry may be, unanticipated delays may prevent the police from entering a home immediately. Here, the questioning of individuals at the arrest scene and the need to contact and wait for police from another jurisdiction created a significant delay. Had the police immediately begun the process of procuring a warrant, it might have been available at the time of entry, eliminating any possibility of a Fourth Amendment violation or the exclusion of incriminating evidence.

> Our previous exigent circumstance cases have emphasized that the police began the process of obtaining a warrant as soon as they had probable cause. *See [U.S. v.] Chavez,* 812 *F.*2d [1295] at 1300 [10th Cir.1987]; *[U.S. v.] Mabry,* 809 *F.*2d [671] at 678–79 [10th Cir.1987]; *[U.S. v.] Cuaron,* 700 *F.*2d [582] at 587–589 [10th Cir.1983]; *[U.S. v.] Erb,* 596 *F.*2d [412] at 419 [10th Cir.1979]. Although we have yet to exclude evidence discovered pursuant to an otherwise legitimate warrantless entry because of delay, we stress, as we did in *Cuaron,* that "we do not here hold that the presence of exigent circumstances obviates the need for a warrant in any subsequent search, no matter how long delayed." *Id.* at 590.

> The officers' failure to begin the process of obtaining a warrant is especially troubling in a case involving a home, concerning as it does the privacy interests of innocent individuals who might, as here, be living with the suspected drug dealer. In this case, Aquino's wife and three children, had they not consented to a search, would have been subject to police presence in their home for at least an hour and a half longer than would have been necessary had the police begun the process of obtaining a warrant when the existence of probable cause first became clear. In addition, had the police sought a warrant earlier, the warrant might have been available shortly after the entry, eliminating the need for consent, another possible basis upon which an arrestee can later attack the legality of the search. Proper observance of the warrant requirement thus

protects both individuals' privacy interests and the government's interest in convicting criminals. [836 *F.*2d at 1273–1274.]

We conclude that the State has not met its "heavy burden," *Welsh v. Wisconsin,* 466 *U.S.* at 749, 104 *S.Ct.* at 2097, of demonstrating that the warrantless entry and search of this dwelling area was justified. The entry, search and seizure occurred at midday on a Wednesday. The informant spoke to the police only a mile from the County and Municipal courthouse in this State's biggest city. Eight policemen were dispatched to raid defendant's apartment, two miles from the courthouse. (The location where the informant talked to Officer Da'Elia was equidistant between the courthouse and the location of the raid on defendant's apartment on North Sixth Street.)

The search is presumed invalid. *State v. Valencia,* 93 *N.J.* at 133; *State v. Hutchins,* 226 *N.J.Super.* 454, 457 (App.Div. 1988); *State v. Bolte,* 225 *N.J.Super.* 335, 339–340 (App.Div. 1988). Our "after-the-fact" evaluation does not satisfy us that the State has justified an intrusion into a living area without a warrant. The showing of the alleged informant's reliability and veracity used to establish the claimed probable cause was "bare-bones" at best. No effort was made to obtain a warrant. Not the slightest excuse for failure to try was proffered or seems palatable under the circumstances. As Justice Handler said in *State v. Valencia,* 93 *N.J.* at 134 "strict adherence to the protective rules governing search warrants is an integral part of the constitutional armory safeguarding citizens from unreasonable searches and seizures." And as Justice Scalia recently observed "... there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Arizona v. Hicks,* 480 *U.S.* 321, ——, 107 *S.Ct.* 1149, 1155, 94 *L.Ed.*2d 347, 357 (1987).

REVERSED.