744 A.2d 656 (2000)
328 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Richard Gary HOLLAND, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Michael J. Califano, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1999.
Submitted November 10, 1999.
Decided January 26, 2000.
*657 Ivelisse Torres, Public Defender, for defendant-appellant in No. A-2670-97T4 (Peter N. Milligan, Designated Counsel, of counsel and on the brief).
Andrew N. Yurick, Gloucester County Prosecutor, for plaintiff-respondent in No. A-2670-97T4 (Audrey M. Curwin, Assistant Prosecutor, on the brief).
Peter M. O'Mara, Red Bank, for defendant-appellant in No. A-5641-97T2.
Mark P. Stalford, Assistant Prosecutor, for plaintiff-respondent in No. A-5641-97T2 (John Kaye, Monmouth County Prosecutor, attorney; Mr. Stalford, of counsel and on the brief).
Before Judges BROCHIN, EICHEN and WECKER.
No. A-5641-97T2 Argued November 4, 1999.
No. A-2670-97T4 Submitted November 10, 1999.
The opinion of the court was delivered by BROCHIN, J.A.D.
After a jury trial, defendant Richard Gary Holland was convicted of possession of more than fifty grams of marijuana (N.J.S.A. 2C:35-10(a)(3)) and possession of more than one ounce but less than five pounds of marijuana with the intent to distribute it (N.J.S.A.2C:35-5(a)(1)). He was sentenced to two years' probation conditioned on 100 hours of community service and to mandatory penalties totaling $1,175 and the suspension of his driver's license. He challenges the trial court's denial of his pretrial motion to suppress evidence against him on the ground that it was the product of an illegal, warrantless search. He also asserts that his sentence is excessive.
In a separate, unrelated case, defendant Michael Califano was charged with the disorderly persons offense of possessing fifty grams or less of marijuana (N.J.S.A. 2C:35-10(a)(4)). He moved before trial in the Manasquan municipal court to suppress the evidence against him on the ground that it was the product of an illegal, warrantless search. After the denial of his motion, defendant was admitted into the conditional discharge program and the conditions of the discharge were stayed pending appeal. On appeal, the Superior Court, Law Division, reaffirmed the denial of his motion. Mr. Califano challenges that ruling.
Mr. Holland's and Mr. Califano's cases were presented to us on two successive calendars. The only connection between them is that in each of the cases a policeman knocked on the exterior door of a residence because he smelled the odor of burning marijuana emanating from the residence and one or more policemen observed contraband when they entered the residence without a warrant. We have consolidated the two cases solely for the purpose of deciding them by this opinion because they both present similar legal questions.

-1-
The residence which the police entered in the Holland case is one of two adjoining duplex apartments. A Glassboro policeman responded to one of the two duplexes to assist an emergency ambulance crew. While he was on the porch that was common to the two units, he smelled a strong odor of burning marijuana coming from the other duplex apartment. A second Glassboro policeman also arrived to assist *658 the ambulance crew. He, too, smelled marijuana. Two other policemen were summoned and came to the scene to help investigate the source of the odor of burning marijuana.
After the medical emergency had been dealt with and the ambulance had left or was about to leave, two of the police officers stationed themselves outside the back door of the apartment from which the marijuana smell was emanating. Two other policemen approached the front door. They stood on the front porch outside the door and one of them announced, "Glassboro police, could you open the door please." The policemen heard talking and laughing through the open window. One person, later identified as defendant, was seen going to a freezer toward the back of the house. He then ran out of the house through the back door[1] and was apprehended and placed under arrest. In reply to a question from the police, he confirmed that there was someone else in the house.
Two of the policemen then entered the house. Inside they observed various items of drug paraphernalia in plain view. While the police were on the first floor of the house, a man came down the stairs. The police detained him and took him outside. He told the police he was unsure whether there was anyone else in the house.
The police went upstairs. On the second floor, they saw a large number of glassine bags of various sizes, a scale, and green vegetable material which they suspected was marijuana. On the top floor, they saw a room that was fitted out for growing marijuana. On the way to the basement, they found a handgun case in plain view with a loaded gun inside. When they reached the basement, they found another room fitted out with a rotating light on a timer, irrigation lines, and growing pots to grow marijuana. They then opened the freezer to which they had seen defendant go before leaving the house. Inside the freezer, they found two large clear plastic bags containing what they suspected was marijuana.
On the basis of what they had observed, the police then obtained a search warrant and retrieved the evidence they had seen. The only items which they took before obtaining a warrant were the gun and gun case.
Defendant Holland contends that the United States and New Jersey Constitutions forbade the police to enter the residence without a warrant. He also asserts that once inside, they had no legal right to range throughout the house and, particularly, that they had no legal right to open the freezer.

-2-
In the Califano case, the residence was a house on a street near the beach in the shore community of Manasquan. A policeman on bicycle patrol at approximately 10:40 p.m. on September 5, 1997, smelled burning marijuana as he bicycled past. He turned around and retraced his path. One of the houses he was passing when he smelled burning marijuana had lights on in the front room and persons were standing about, drinking as at a party. He stood on the porch of the house and knocked on the front door. A woman who was an occupant of the house answered his knock and opened the door. While it was open, he identified himself as a police officer. He *659 saw persons who had been in the front room hurrying away toward the rear of the house. He told the person who had come to the door that he could smell marijuana coming from the house. He asked her whether she would have a problem with his entering. She answered, "No, not at all ... they're smoking in the back section of the house." From its context, the policeman could reasonably have understood the answer as an acknowledgment that persons in the back section of the house were smoking marijuana. The policeman testified that he saw defendant Califano and two other men walking down the stairway and that they were on the "back porch smoking a marijuana cigarette." The policeman escorted the men outside the house, administered Miranda warnings and questioned them. Defendant took the officer to where there was a small amount of marijuana and a partially smoked marijuana cigarette.
Both the State and defendant Califano proceeded in both the municipal court and the Law Division on the assumption that the State could not successfully rely on the consent to enter given by the woman who answered the policeman's knock on the door because the State could not show that she knew that she had the right to refuse to admit him. See State v. Johnson, 68 N.J. 349, 346 A.2d 66 (1975). On that assumption, which we accept for the purpose of our decision, the issue before us is whether the policeman's entry was authorized by what he knew before he went in.

-3-
Our Supreme Court declared in State v. Hutchins, 116 N.J. 457, 462-63, 561 A.2d 1142 (1989) (emphasis added):
As the United States Supreme Court has acknowledged, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972). Accordingly, it is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable," Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980), and hence "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances."

Welsh v. Wisconsin, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743 (1984).
See also State v. Ulrich, 265 N.J.Super. 569, 572-73, 628 A.2d 368 (App.Div.1993) (the two prongs of the test of the legality of a warrantless intrusion into a residence are probable cause and exigent circumstances), certif. denied, 135 N.J. 304, 639 A.2d 303 (1994).
Reported decisions have repeatedly recognized that the detection of the smell of burning marijuana establishes probable cause for believing that there is contraband in the immediate vicinity and that a criminal offense is being committed. State v. Vanderveer, 285 N.J.Super. 475, 478-79, 667 A.2d 382 (App.Div.1995); State v. Judge, 275 N.J.Super. 194, 201, 645 A.2d 1224 (App.Div.1994); State v. Sarto, 195 N.J.Super. 565, 574, 481 A.2d 281 (App. Div.1984); State v. Gaines, 147 N.J.Super. 84, 96-97, 370 A.2d 856 (App.Div.1975), aff'd, 72 N.J. 346, 370 A.2d 854 (1977); see also Donald M. Zupanec, Annotation, Odor of Narcotics as Providing Cause for a Warrantless Search, 5 A.L.R.4th 681 (1981).
In both the Holland and Califano cases, police witnesses testified that as the result of their training and experience they were able to identify the distinctive smell of burning marijuana and that they detected that odor emanating from the residences which they subsequently entered. The judges who considered the defendants' motions to suppress credited the police officers' testimony, and there is no reason for it not to be believed. It establishes that in both cases there was probable cause to believe that one or more persons on the premises from which the odor was *660 emanating possessed an unknown quantity of marijuana, a disorderly persons offense. See N.J.S.A. 2C:35-10(a)(4). This satisfies the first prerequisite for the legality of a warrantless search.
As the Court pointed out in Hutchins, supra, 116 N.J. at 460, 561 A.2d 1142, the second prerequisite is the existence of "exigent circumstances." A realistic danger that evidence of a crime will be destroyed or will disappear before a warrant can be obtained may be one such "exigent circumstance." See State v. Lewis, 116 N.J. 477, 484-85, 561 A.2d 1153 (1989); Hutchins, supra, 116 N.J. at 464, 561 A.2d 1142; cases cited id. at 464-67, 561 A.2d 1142.
In Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), the Court held that a "minor offense" would ordinarily not generate the "exigent circumstances" which would justify a warrantless search or arrest in the suspect's home. In Welsh, the police violated the defendant's Fourth Amendment rights by arresting him in his home without a warrant for driving while intoxicated. The Court emphasized that "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." Id. at 749-50, 104 S.Ct. at 2097, 80 L.Ed.2d at 743. The opinion notes that only "hot pursuit of a fleeing felon," "destruction of evidence," and "ongoing fire" were recognized by the Court as emergency situations justifying a warrantless search or arrest and that only the "hot pursuit" doctrine was applied to arrests in the home. Id. at 750, 104 S.Ct. at 2097-98, 80 L.Ed.2d at 743. In language that is particularly pertinent to the cases before us, the Court continues:
Our hesitation in finding exigent circumstances, particularly when warrantless arrests in the home are at issue, is especially appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

[Id. at 750, 104 S.Ct. at 2098, 80 L.Ed.2d at 743 (citations omitted) (emphasis added).]
The Welsh opinion explicates the meaning of "minor offense" by pointing out in a footnote to that phrase that in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which prohibits warrantless arrests in the home without probable cause and exigent circumstances, the dissenters,
although believing that warrantless home arrests are not prohibited by the Fourth Amendment, recognized the importance of the felony limitation on such arrests. See 445 U.S. at 616-617, 100 S.Ct. 1371, 63 L.Ed.2d 639 (White, J., joined by Burger, C.J., and Rehnquist, J., dissenting) ("The felony requirement guards against abusive or arbitrary enforcement and ensures that invasions of the home occur only in case of the most serious crimes").
[Welsh, supra, 466 U.S. at 750, 104 S.Ct. at 2098, 80 L.Ed.2d at 743.]
In further amplification of the meaning of "minor offense" in this context, the Welsh opinion quotes with approval as follows from a concurring opinion of Justice Jackson in McDonald v. United States, 335 U.S. 451, 459-60, 69 S.Ct. 191, 195-96, 93 L.Ed. 153 (1948), a case arising from a conviction for conducting an illegal numbers game,
Whether there is reasonable necessity for a search without waiting to obtain a *661 warrant certainly depends somewhat upon the gravity of the offense thought to be in progress as well as the hazards of the method of attempting to reach it.... It is to me a shocking proposition that private homes, even quarters in a tenement, may be indiscriminately invaded at the discretion of any suspicious police officer engaged in following up offenses that involve no violence or threats of it.... When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant.
[Welsh, supra, 466 U.S. at 750-51, 104 S.Ct. at 2098, 80 L.Ed.2d at 744.]
The New Jersey Supreme Court recognized in State v. Bolte, 115 N.J. 579, 597, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989), that Welsh had placed constitutional limits on the use of the doctrine of exigent circumstances to justify a warrantless entry into a home. In Bolte, the police entered the defendant's home to arrest him for drunk driving. A police officer had observed him driving erratically for approximately one mile. The defendant then entered his house through his garage door. The police officer followed him in without a warrant, arrested him and took him to the police station for a breathalyzer test. The Court noted the State's concession that when the arresting officer entered the defendant's home, he lacked probable cause to believe that the defendant had been driving while intoxicated. Ibid. Therefore, the Court noted, the police had probable cause to believe only that defendant had committed several motor vehicle violations and two disorderly persons offenses, eluding, N.J.S.A. 2C:29-2(b), and resisting arrest, N.J.S.A. 2C:29-2(a). Citing Welsh, supra, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 for the "holding that an arrest for a `minor offense' can rarely support a finding of exigent circumstances sufficient to justify a warrantless home entry," the New Jersey Supreme Court held that "these offenses, individually and in the aggregate, are within the category of `minor' offenses held by the Welsh Court to be insufficient to establish exigent circumstances justifying a warrantless home entry." Bolte, supra, 115 N.J. at 597, 560 A.2d 644. Cf. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (odor of burning opium emanating from a hotel room did not justify a warrantless entry into the room).
We conclude that defendants' motions to suppress in both the Holland and Califano cases are governed by Welsh and Bolte. In both cases, the only evidence of crime the police officers had before they entered the premises was the smell of burning marijuana. There is nothing in the records of either of the cases to show that they had probable cause to believe that either premises housed more than fifty grams of marijuana. In other words, they had probable cause to believe only that a disorderly persons offense was being committed. See N.J.S.A. 2C:35-10(a)(3) and (4). We are not authorized to make a moral judgment that possession of fifty grams or less of marijuana is a graver offense than the disorderly persons offenses of eluding or resisting arrest. The need to search for evidence of possession of marijuana or to arrest the possessors therefore did not constitute "exigent circumstances" which justified the police entering defendants' residences without a warrant. Cf. State v. Lewis, 227 N.J.Super. 593, 548 A.2d 231 (App.Div.1988) ("bare-bones" showing of probable cause to believe that there was drug dealing in a residence did not establish "exigent circumstances" which obviated search warrant).
Nonetheless, there are reported cases from other jurisdictions which hold that because the smell of burning marijuana is itself proof that evidence of criminal conduct is being destroyed, the detection of that smell establishes "exigent circumstances." See State v. Decker, 119 Ariz. *662 195, 580 P.2d 333 (1978); State v. Kosman, 181 Ariz. 487, 892 P.2d 207 (Ct.App.1995); Mendez v. People, 986 P.2d 275 (Colo. 1999); People v. Baker, 813 P.2d 331 (Colo. 1991); Joseph v. State, 3 S.W.3d 627 (Tex. App.1999). These cases, however, fail to cite Welsh, supra, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. The cases from other jurisdictions which cite Welsh hold that the smell of burning marijuana does not evidence an offense which is sufficiently grave to justify entering a residence without a warrant. See State v. Curl, 125 Idaho 224, 869 P.2d 224 (1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 646 (1994); Haley v. State, 696 N.E.2d 98 (Ind.Ct.App.1998); State v. Beeken, 7 Neb.App. 438, 585 N.W.2d 865, 872 (1998) (dictum); State v. Wagoner, 126 N.M. 9, 966 P.2d 176 (Ct.App.), certif. denied, 125 N.M. 654, 964 P.2d 818 (1998); State v. Ackerman, 499 N.W.2d 882 (N.D. 1993); State v. Robinson, 103 Ohio App.3d 490, 659 N.E.2d 1292 (1995); State v. Ramirez, 49 Wash.App. 814, 746 P.2d 344 (1987). In our view, it is this latter group of cases that correctly interpret the decision of the United States Supreme Court in Welsh, which, of course, is binding on us under the Supremacy Clause of the United States Constitution.
We therefore remand both cases to the Law Division. The evidence collected in the Califano case must be suppressed. In the Holland case, the remand court should determine whether the evidence should be suppressed or whether it may be admissible pursuant to Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) and State v. Chaney, 318 N.J.Super. 217, 221, 723 A.2d 132 (App. Div.1999).
We reject defendant Holland's challenge to his probationary sentence as entirely without merit R. 2:11-3(e)(2).
The judgments appealed from in both the Holland and Califano cases are reversed and the cases are remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] One of the two policemen who were witnesses at the suppression hearing testified that defendant dropped or threw a dry marijuana bud as he came out of the house. The officer claimed to have retrieved the marijuana bud and to have put it in an evidence bag, but it was never found and there is no record of it. Whether or not a marijuana bud was seen is immaterial to our disposition of the case.

There is no merit to the State's contention that the circumstances authorized the police to make a "protective sweep" of the premises because there was no evidence to support a reasonable belief on the part of the police that they were in danger before they entered the house. Cf. State v. Lund, 119 N.J. 35, 50, 573 A.2d 1376 (1990); State v. Smith, 140 N.J.Super. 368, 373, 356 A.2d 401 (App.Div.1976), aff'd o.b. 75 N.J. 81, 379 A.2d 1275 (1977).