62 A.3d 897

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. RASHAD WALKER A/K/A DERRICK MOSS,
DEFENDANT–RESPONDENT.

Argued October 11, 2012—Decided April 10, 2013.

*Hillary K. Horton,* Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*Amira R. Scurato,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* Public Defender, attorney).

Judge A.A. RODRÍGUEZ (temporarily assigned) delivered the opinion of the Court.

This criminal appeal arises from a warrantless entry into defendant Rashad Walker's apartment, by undercover police officers who saw defendant smoking a marijuana cigarette during a brief interaction with him, while the apartment door was open. Defen-

dant's motion to suppress evidence of possession of cocaine, heroin, and marijuana was denied. He entered into a plea agreement with the State to plead guilty to two counts of third-degree possession of controlled dangerous substances (CDS) with the intent to distribute, *N.J.S.A.* 2C:35–5a(1), and one count of third-degree possession of CDS with the intent to distribute while within 500 feet of public housing, *N.J.S.A.* 2C:35–7.1. The judge imposed three six-year extended terms, subject to a three-year period of parole ineligibility, to be served concurrently.

Defendant appealed the denial of his motion to suppress and his sentence. The Appellate Division reversed the denial of defendant's motion to suppress, vacated the conviction, and remanded the matter to the Law Division for further proceedings. The appellate panel did not address the sentence. On December 8, 2011, we granted the State's petition for certification. We now reverse.

## I.

At the hearing on the motion to suppress, Newark Police Detective James Cosgrove, of the Narcotics Enforcement Team, testified that in the mid-morning of March 29, 2008, he received a tip from a confidential source. The informant had provided useful information to the Newark Police Department on at least ten occasions. The tip was that an African–American male was selling marijuana, cocaine, and heroin from a specified apartment in the Riverview Court public housing project in Newark. Around 11:00 p.m., Cosgrove and fellow officers Javier Rivera, Christopher Sigara, and James Rios, dressed in plain clothes, went to defendant's apartment. The officers intended to buy CDS from defendant, in order to corroborate the tip.

Officer Rios was chosen to be the buyer. Rios knocked at the apartment door. An African–American man, later identified as defendant, answered it. He was smoking a hand-rolled cigarette. Cosgrove, who was standing just outside the door, immediately recognized the smell of burning marijuana. Then defendant saw

Rivera's police badge hanging around his neck. Defendant threw the cigarette into his apartment, retreated, and attempted to slam the door shut. Rios stopped the door from closing, followed defendant into the apartment, and arrested him. According to Cosgrove, he and the three officers entered the apartment to prevent defendant from fleeing, destroying evidence, retrieving a weapon, or in some other way impeding his arrest for possession of marijuana.

Defendant was searched in the living room. On his person, the officers found $99 in cash. In plain view in the living room, the officers saw a plastic bag containing 22.4 grams of marijuana, twenty-seven envelopes of heroin stamped "Horsepower," a plastic bag containing 4.2 grams of cocaine, a small Ziploc-style bag containing marijuana, a marijuana cigarette, a dark-colored plate with cocaine residue on it, a razor blade, and a digital scale.

No other witnesses testified at the hearing. The trial court denied the motion to suppress, concluding that probable cause to arrest defendant arose at the moment defendant opened the door smoking a marijuana cigarette, which is a disorderly persons offense. The trial court relied on *N.J.S.A.* 40A:14–152, which defines the power of law enforcement officers to arrest any person committing a disorderly persons offense in their presence.

The Appellate Division reversed, holding that, as a matter of law, the circumstances did not provide a sufficient basis for the officers' entry into defendant's home.

## II.

The State relies on *State v. Keyes,* 184 *N.J.* 541, 555, 878 *A.2d* 772 (2005), arguing that the tip provided the probable cause necessary for the arrest of defendant inside his home. The State asserts that the source was reliable, by virtue of the accurate information the informant had provided on many prior occasions and the tips specifically, including the race and gender of the alleged seller, the exact location, and the types of drugs for sale.

The State also argues that defendant's answering the door while smoking a marijuana cigarette constituted further corroboration. This established additional probable cause to arrest defendant. Additionally, the State argues that even if the tip and the observation of defendant smoking a marijuana cigarette did not establish sufficient probable cause, defendant's retreat into the apartment "certainly tipped the scales in favor of a 'fair probability' that drug evidence would be located inside." *State v. O'Neal*, 190 *N.J.* 601, 612, 921 *A.*2d 1079 (2007).

As to whether or not exigent circumstances existed, the State urges the Court to reverse the Appellate Division panel's decision because it is inconsistent with the holdings in *Kentucky v. King*, 563 *U.S.* ——, 131 *S.Ct.* 1849, 179 *L.Ed.*2d 865 (2011), and *State v. Hutchins*, 116 *N.J.* 457, 561 *A.*2d 1142 (1989). The State argues that the officers here did not create exigent circumstances by knocking on defendant's door because any person may knock on the door of a home.

Defendant argues that the police officers took no steps to corroborate the information they had received before entering defendant's home. The only evidence of a crime the officers had before entering the premises was "the smell of marijuana and the observation of [a] rolled cigarette." Defendant also argues that the United States Supreme Court's holding in *King* does not support the State's argument that probable cause was established prior to entry because *King* only held, in the probable-cause context, that probable cause "must first be established before any exigent circumstances are even considered." (citing *King, supra*, 563 *U.S.* at ——, 131 *S.Ct.* at 1861, 179 *L.Ed.*2d at 880). Therefore, defendant argues that the officers did not have probable cause to arrest him because defendant's possession and use of marijuana did not adequately corroborate the confidential tip that he was dealing drugs.

Defendant concedes that decisions in New Jersey have "repeatedly recognized that ... the smell of burning marijuana establishes probable cause that there is contraband in the immedi-

ate vicinity and that a criminal offense is being committed," and that the detection of that smell satisfies the probable-cause requirement.[1] But, relying on *Welsh v. Wisconsin*, 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732 (1984), and *State v. Holland*, 328 *N.J.Super.* 1, 744 *A.*2d 656 (App.Div.), *certif. denied*, 164 *N.J.* 560, 753 *A.*2d 1153 (2000), defendant argues that the smell alone could not provide the basis for exigent circumstances because possession of a marijuana cigarette is a disorderly persons offense, pursuant to *N.J.S.A.* 2C:35–10(a)(4). Defendant relies on *State v. Bolte*, 115 *N.J.* 579, 597, 560 *A.*2d 644 (1989), which adopted the reasoning of *Welsh* that "[disorderly persons] offenses, individually and in the aggregate, are within the category of 'minor' offenses held by the *Welsh* Court to be insufficient to establish exigent circumstances justifying a warrantless home entry."

The State responds that the Supreme Court's holding in *Welsh* does not apply to this matter because the police officers here had probable cause that defendant possessed with intent to distribute CDS while within 500 feet of a public building, contrary to *N.J.S.A.* 2C:35–7.1(a).

Lastly, defendant argues that even if the officers' entry into his home was authorized, the exigency existed "only to stop that marijuana from getting destroyed." Because here the marijuana was discarded at the entryway of the home, "[a]ny police entry past that point could not be justified."

### III.

Our analysis begins with the bedrock constitutional mandates of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, which

---

[1] *See State v. Vanderveer*, 285 *N.J.Super.* 475, 478–79, 667 *A.*2d 382 (App.Div. 1995); *State v. Judge*, 275 *N.J.Super.* 194, 201, 645 *A.*2d 1224 (App.Div.1994); *State v. Sarto*, 195 *N.J.Super.* 565, 574, 481 *A.*2d 281 (App.Div.1984); *State v. Gaines*, 147 *N.J.Super.* 84, 96–97, 370 *A.*2d 856 (App.Div.1975), *aff'd*, 72 *N.J.* 346, 370 *A.*2d 854 (1977).

"protect citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause." *State v. Johnson*, 171 *N.J.* 192, 205, 793 *A.*2d 619 (2002).

■ We have held that New Jersey's constitution provides greater protection to criminal defendants than the Fourth Amendment. *See, e.g., State v. Carty*, 170 *N.J.* 632, 639, 790 *A.*2d 903 (2002) (consent searches); *State v. Cooke*, 163 *N.J.* 657, 666–67, 751 *A.*2d 92 (2000) (automobile exception); *State v. Novembrino*, 105 *N.J.* 95, 145, 519 *A.*2d 820 (1987) (good-faith exception). "The warrant requirement provides citizens with protection from unreasonable arrests by having a neutral magistrate determine probable cause before an arrest is made." *State v. Brown*, 205 *N.J.* 133, 144, 14 *A.*3d 26 (2011) (citing *State v. Henry*, 133 *N.J.* 104, 110, 627 *A.*2d 125, *cert. denied*, 510 *U.S.* 984, 114 *S.Ct.* 486, 126 *L.Ed.*2d 436 (1993)).

■■ The warrant requirement is strictly applied to physical entry into the home because the primary goal of the Fourth Amendment and Article I, Paragraph 7 of the state constitution is to protect individuals from unreasonable home intrusions. *Hutchins, supra*, 116 *N.J.* at 462–63, 561 *A.*2d 1142. This is so because home intrusions are the " 'chief evil' " against which constitutional provisions were directed. *Ibid.* (quoting *United States v. U.S. Dist. Court*, 407 *U.S.* 297, 313, 92 *S.Ct.* 2125, 2134, 32 *L.Ed.*2d 752, 764 (1972)). Accordingly, a warrantless arrest in an individual's home is " 'presumptively unreasonable.' " *Id.* at 463, 561 *A.*2d 1142 (quoting *Payton v. New York*, 445 *U.S.* 573, 586, 100 *S.Ct.* 1371, 1380, 63 *L.Ed.*2d 639, 651 (1980)).

■■ Nonetheless, "we have adopted the principle that 'exigent circumstances' in conjunction with probable cause may excuse police from compliance with the warrant requirement." *Bolte, supra*, 115 *N.J.* at 585–86, 560 *A.*2d 644. Therefore, warrantless home arrests are prohibited "absent probable cause and exigent circumstances." *Hutchins, supra*, 116 *N.J.* at 463, 561 *A.*2d 1142 (quoting *Welsh, supra*, 466 *U.S.* at 749, 104 *S.Ct.* at

2097, 80 *L.Ed.*2d at 743); *accord Brown, supra,* 205 *N.J.* at 145, 14 *A.*3d 26.

■ "Without a warrant, the State has the burden of proving the overall reasonableness of an arrest." *Brown, supra,* 205 *N.J.* at 144, 14 *A.*3d 26; *see State v. Mann,* 203 *N.J.* 328, 337–38, 2 *A.*3d 379 (2010). The State must show by a preponderance of the evidence that the warrantless arrest was valid. *O'Neal, supra,* 190 *N.J.* at 611, 921 *A.*2d 1079 (citing *State v. Pineiro,* 181 *N.J.* 13, 20, 853 *A.*2d 887 (2004)).

First, we must determine whether the information provided by the confidential source, standing alone, is sufficient to establish probable cause. If not, we then scrutinize the independent observations made by the police officers upon their arrival at defendant's apartment "to determine if they adequately supplement the informant's allegations" and give rise to probable cause, or if the officers' observations do so on their own. *Novembrino, supra,* 105 *N.J.* at 125–26, 519 *A.*2d 820.

"New Jersey courts have recognized that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" *State v. Nishina,* 175 *N.J.* 502, 516–17, 816 *A.*2d 153 (2003)(quoting *Vanderveer, supra,* 285 *N.J.Super.* at 479, 667 *A.*2d 382 (edit in original)); *see also Gaines, supra,* 147 *N.J.Super.* at 96–97, 370 *A.*2d 856. As the Appellate Division explained in *Judge, supra,*

[u]nlike the smell of alcohol emanating from the passenger compartment of a stopped motor vehicle, or even on the breath of the driver, both of which might be lawful, using or possessing marijuana in a motor vehicle in New Jersey is a *per se* violation of the laws of this State.... Thus, the smell of burnt marijuana under the total circumstances created a heightened and reasonable suspicion that an offense was being committed.

[275 *N.J.Super.* at 202, 645 *A.*2d 1224.]

■ The testimony of the sole witness at the hearing was largely uncontested. Cosgrove's credibility was challenged on cross-examination, but the trial judge credited his testimony. This Court must give deference to the trial court's credibility findings. *State v. Handy,* 206 *N.J.* 39, 44, 18 *A.*3d 179 (2011).

■ The informant's history of providing reliable information to police on ten prior occasions was sufficient to support his veracity. However, the mere fact that the informant was reliable in the past cannot itself establish probable cause. There is no indication either directly from the source or in the details provided in the tip that specifies the informant's basis of knowledge. Nowhere did the informant indicate where he obtained the information or whether it was obtained in a reliable manner. Here, the tip lacked greater detail than the tip this Court held insufficient to provide an adequate basis of knowledge in *Keyes, supra,* 184 *N.J.* at 555, 878 *A.*2d 772—"a black male in apartment 2D of the Riverview housing projects was selling cocaine, heroin, and marijuana." Also, the tip did not indicate any detail of when the information was obtained; even if accurate at one time, there was no guarantee that the contraband would still be in defendant's apartment when police went to investigate. Therefore, the tip lacked the requisite basis of knowledge to provide probable cause to believe defendant possessed CDS with intent to distribute. Nevertheless, the officers observed defendant smoking a marijuana cigarette in violation of *N.J.S.A.* 2C:35–10(a)(4) in their presence. At that point, the officers had probable cause to arrest defendant.

■ Despite the existence of probable cause to arrest defendant, a showing of exigent circumstances was required in order to comply with the Fourth Amendment, specifically "the exigencies of the situation" must make a warrantless home arrest " 'imperative.' " *Bolte, supra,* 115 *N.J.* at 584, 560 *A.*2d 644 (quoting *Chimel v. California,* 395 *U.S.* 752, 761, 89 *S.Ct.* 2034, 2039, 23 *L.Ed.*2d 685, 693 (1969)). As the Supreme Court has held, this exception only "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is *objectively reasonable.*" *King, supra,* 563 *U.S.* at ——, 131 *S.Ct.* at 1856–57, 179 *L.Ed.*2d at 874 (quoting *Mincey v. Arizona,* 437 *U.S.* 385, 394, 98 *S.Ct.* 2408, 2414, 57 *L.Ed.*2d 290, 301 (1978)). "Consequently, the application of the doctrine of

exigent circumstances demands a fact-sensitive, objective analysis." *State v. DeLuca*, 168 *N.J.* 626, 632, 775 *A.*2d 1284 (2001) (citing *State v. Bruzzese*, 94 *N.J.* 210, 219, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984)).

"In determining whether exigency exists, courts consider many factors," including

the degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.

[*Id.* at 632–33, 775 *A.*2d 1284.]

Exigent circumstances include "the need to apprehend and subdue an armed felon" who enters a residence when, under "hot pursuit," he flees from law enforcement, *Hutchins, supra*, 116 *N.J.* at 464, 561 *A.*2d 1142 (citing *Warden v. Hayden*, 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967)), and "the potential destruction of evidence," *Hutchins, supra*, 116 *N.J.* at 464, 561 *A.*2d 1142 (citing *United States v. Santana*, 427 *U.S.* 38, 43, 96 *S.Ct.* 2406, 2409–10, 49 *L.Ed.*2d 300, 305 (1976) (finding exigent circumstances because "[o]nce [defendant] saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence")).

In *King, supra*, the United States Supreme Court explained that in response to a knock on their door by law enforcement, occupants have the right to refuse to answer the door or to refuse to speak with the officers. The Court held, however, that "[o]ccupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue." 563 *U.S.* at ——, 131 *S.Ct.* at 1862, 179 *L.Ed.*2d at 881. The possible destruction of evidence is of great concern when dealing with controlled dangerous substances because "drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain." *Id.* at ——, 131 *S.Ct.* at 1857, 179

L.Ed.2d at 876; *see also State v. Alvarez,* 238 *N.J.Super.* 560, 565, 570 *A.*2d 459 (App.Div.1990).

As noted above, the gravity of the underlying offense for which the arrest is being made is an "important factor to be considered when determining whether any exigency exists." *Welsh, supra,* 466 *U.S.* at 753, 104 *S.Ct.* at 2099, 80 *L.Ed.*2d at 745; *see also Bolte, supra,* 115 *N.J.* at 592, 560 *A.*2d 644 (adopting Supreme Court's holding in *Welsh* ). A number of cases address that factor.

In *Welsh, supra,* after a witness reported observing a car driving erratically, police checked the car's registration and obtained defendant's address. 466 *U.S.* at 742, 104 *S.Ct.* at 2094, 80 *L.Ed.*2d at 738. Without a warrant, law enforcement entered the defendant's home when his step-daughter answered the door, proceeded into the defendant's bedroom, and placed him under arrest for driving while under the influence. *Id.* at 743, 104 *S.Ct.* at 2094, 80 *L.Ed.*2d at 739. The Supreme Court held that the seizure violated the Fourth Amendment, focusing on the critical fact that under Wisconsin law, "driving while intoxicated was treated as a noncriminal violation subject to a civil forfeiture proceeding for a maximum fine of $200." *Id.* at 746, 104 *S.Ct.* at 2095, 80 *L.Ed.*2d at 740–41. The Supreme Court found that when the government's only interest in entering a home without a warrant "is to arrest for a minor offense, [the] presumption of unreasonableness that attaches to the officers' conduct is difficult to rebut." *Id.* at 750, 104 *S.Ct.* at 2098, 80 *L.Ed.*2d at 743.

In *Holland, supra,* the Appellate Division consolidated two unrelated cases involving warrantless searches of homes. 328 *N.J.Super.* at 2, 744 *A.*2d 656. In one case, an officer knocked on the defendant Holland's door because he smelled burning marijuana emanating from the residence. *Id.* at 3, 744 *A.*2d 656. Officers entered the home after they apprehended a person who attempted to leave through the back door. *Id.* at 4, 744 *A.*2d 656. They conducted a search of the residence and found a large quantity of marijuana, drug paraphernalia, including equipment to grow mari-

juana, and a loaded gun. *Id.* at 4–5, 744 *A.*2d 656. In the second case, a policeman on a bicycle patrolling the seaside town of Manasquan smelled burning marijuana as he rode past a home. *Id.* at 5, 744 *A.*2d 656. He knocked on the front door of the home, and a woman inside consented to his entrance. *Ibid.* When the officer entered, he saw defendant Califano and others smoking a marijuana cigarette on the back porch. *Id.* at 5–6, 744 *A.*2d 656. The Appellate Division limited the issue in both cases to "whether the policeman's entry was authorized by what he knew before he went in." *Id.* at 6, 744 *A.*2d 656.

In examining both cases, the court found that based on New Jersey precedent, the smell of burning marijuana gave officers probable cause that a criminal offense was being committed. *Ibid.* (citations omitted). However, the Appellate Division held that where the only evidence officers have before entering a premises is the smell of burning marijuana, law enforcement only has "probable cause to believe ... that a disorderly persons offense was being committed," *id.* at 10, 744 *A.*2d 656 (citing *N.J.S.A.* 2C:35–10(a)), and exigent circumstances do not exist to justify law enforcement's warrantless entry into the home, *ibid.* (citing *State v. Lewis,* 227 *N.J.Super.* 593, 548 *A.*2d 231 (App.Div.1988) (" 'bare-bones' showing of probable cause to believe that there was drug dealing in a residence did not establish 'exigent circumstances' which obviated search warrant")).

In *Holland, supra,* the court recognized that although reported cases from other jurisdictions have held that "because the smell of burning marijuana is itself proof that evidence of criminal conduct is being destroyed, the detection of that smell establishes 'exigent circumstances,' " those cases fail to address the Supreme Court's decision in *Welsh.* 328 *N.J.Super.* at 10, 744 *A.*2d 656 (citations omitted).

The case law also addresses exigency manufactured by the police. In *Hutchins, supra,* Newark Police received a tip from a reliable informant that "a black male named Bob 'dressed in blue' was 'dealing heroin' from 118 Eleventh Avenue, Newark." 116

*N.J.* at 460, 561 *A.*2d 1142. Two officers went to the address to attempt a controlled buy, and a black male wearing a blue jogging suit answered the door. *Ibid.* He did not respond to the officers' attempted solicitation, but his fist was clenched in a manner suggesting the possible concealment of narcotics. *Ibid.* The officers identified themselves, and the defendant turned and fled into the house. *Ibid.* The officers entered the home and arrested the defendant. *Ibid.* The Court distinguished "between police-created exigent circumstances designed to subvert the warrant require- ment and police-created exigencies that naturally arise in the course of an appropriate police investigation." *Id.* at 469, 561 *A.*2d 1142. Although the Court defined the limitations of the police-created exigency issue, it remanded to determine whether exigent circumstances existed. *Id.* at 476, 561 *A.*2d 1142.

Therefore, in order to justify the officers' warrantless home arrest here, the State must establish: (1) the existence of exigent circumstances, and (2) that those exigent circumstances were not police-created. *See id.* at 468, 561 *A.*2d 1142.

## IV.

■■■ Applying the governing legal principles to evidence that defendant committed the offense in the officers' presence, and examining the totality of the circumstances, we conclude as fol- lows. Although the information contained in the tip was uncorrob- orated, by the time the officers knocked at the door of defendant's apartment, subsequent events, created by defendant's own actions, established probable cause and exigent circumstances which justi- fied an entry into defendant's apartment. Thus, the warrantless seizure of the marijuana cigarette and all the CDS found in defendant's apartment was proper and permissible under the New Jersey and federal constitutions.

We must examine the objective reasonableness of the police officers' conduct at each stage of their interaction with defendant. According to the testimony of Cosgrove, which the trial court credited, after the police knocked at the door, a significant event

occurred. Defendant appeared at the door smoking a marijuana cigarette. Thus, a disorderly persons offense was being committed in the presence of police officers in the hallway of a public housing building, where the officers have a right to be. *See King, supra,* 563 *U.S.* at ——, 131 *S.Ct.* at 1862, 179 *L.Ed.*2d at 881. Defendant was standing inside his apartment. Nonetheless, defendant and the officers were within inches of each other. Clearly, defendant must have been aware that the officers knew that he was committing an offense. Such observations gave rise to probable cause and authorized the officers to arrest defendant for the disorderly persons offense.

Next, a second significant event occurred once again caused by defendant's action. He discarded the marijuana cigarette, retreated into his apartment, and attempted to close the door. At this point, because the officers directly observed defendant committing an offense in their presence and attempting to flee, they were compelled to act to prevent defendant from disposing of the marijuana cigarette, or eluding the officers.

Although the underlying offense here, possession of marijuana, is a disorderly persons offense, the circumstances indicate that the officers' warrantless entry into defendant's home was objectively reasonable for several reasons. First, the officers saw defendant commit the disorderly persons offense. Second, there was a reasonable belief that the evidence was about to be lost or destroyed. Third, the circumstances presented urgency. Any delay would certainly impede apprehension of defendant and seizure of evidence. These facts distinguish this matter from the factual bases presented in *Holland, supra,* where an officer merely smelled marijuana smoke emanating from defendant Holland's house, and where an officer smelled marijuana from outside of a house where defendant Califano was staying. 328 *N.J.Super.* at 3–6, 744 *A.*2d 656. Moreover, these facts clearly distinguish this case from *Welsh, supra,* where the probable cause to believe that the defendant committed motor vehicle violations was based on a

witness's statement that the defendant was driving erratically. 466 *U.S.* at 742, 104 *S.Ct.* at 2094, 80 *L.Ed.*2d at 738.

Furthermore, this case is distinguishable on its facts from *Bolte*. In *Bolte, supra,* a police officer noticed an automobile swerving on and off the road. 115 *N.J.* at 581, 560 *A.*2d 644. The officer activated his police vehicle's lights and siren. *Ibid.* However, the driver, later identified as defendant Bolte, ignored the signals to stop and continued to circle the neighborhood at increasing speeds. *Id.* at 582, 560 *A.*2d 644. Thereafter, Bolte stopped in a private driveway, exited the vehicle, and entered his house through the garage. *Ibid.* The officer followed Bolte "into the house and to the bedroom door where [the officer] informed Bolte that he was under arrest." *Ibid.*

Bolte was taken to police station where he refused to take a breathalyzer test. *Ibid.* He was charged with reckless driving, driving while intoxicated, refusal to submit to a breathalyzer test, speeding, driving on an expired license, failure to maintain a single lane, disorderly conduct, eluding, and resisting arrest. *Ibid.*

Bolte moved to suppress the evidence of his refusal to take a breathalyzer test on the basis that his arrest was unlawful. *Ibid.* The trial court denied the motion. *Ibid.* The Appellate Division reversed the denial of the motion. *Id.* at 583, 560 *A.*2d 644. This Court affirmed the decision based on *Welsh,* holding that "[disorderly persons] offenses, individually and in the aggregate, are within the category of 'minor' offenses held by the *Welsh* Court to be insufficient to establish exigent circumstances justifying a warrantless home entry." *Id.* at 597, 560 *A.*2d 644. However, in *Bolte,* this Court left an exception open to this general rule, citing approvingly a portion of Justice White's dissent in *Welsh:*

> if, under all the circumstances of a particular case, an officer has probable cause to believe that the delay involved in procuring an arrest warrant will gravely endanger the officer or other persons or will result in the suspect's escape, I perceive no reason to disregard those exigencies on the ground that the offense for which the suspect is sought is a "minor" one.

[*Id.* at 598, 560 *A.*2d 644 (quoting *Welsh, supra,* 466 *U.S.* at 759, 104 *S.Ct.* at 2102–03, 80 *L.Ed.*2d at 749 (White, J., dissenting))(emphasis omitted).]

This case differs from *Bolte* in three ways. First, the warrantless police intrusion was significantly limited. Officer Rios went inside defendant's apartment only far enough to detain defendant and secure the marijuana cigarette. Second, defendant opened the door to his apartment while smoking a marijuana cigarette with the intent to interact with and expose himself to the scrutiny of whoever was outside. Third, the officers entered defendant's apartment to prevent the destruction of physical evidence that they observed defendant discard. If the officers did not act to preserve the evidence, defendant might well have escaped prosecution on the marijuana possession charge.

In contrast, defendant Bolte did not open the door to his house to interact with the police officer who attempted to stop his vehicle. *Id.* at 582, 560 *A.*2d 644. Rather, he was trying to evade all contact with the officer. *Ibid.* Moreover, the officer did not observe Bolte attempt to destroy any physical evidence. *Ibid.* In *Bolte,* the officer's objective, based on the facts then known to him, was only to seize Bolte himself. *Id.* at 593, 560 *A.*2d 644.

Accordingly, we hold that here the officers' entry was justified pursuant to the exigent circumstances exception to the warrant requirement. This exception did not authorize a broad search of the apartment, but justified a limited entry necessary to arrest defendant for the disorderly persons offense and to retrieve the marijuana cigarette.

Nevertheless, after entering, the officers saw in the living room CDS and other contraband in plain view. These items were subject to seizure as well. Our holding is limited to the precise facts before us. We do not suggest that, had no one come to the door, the mere smell of marijuana would have justified a forced entry into defendant's home.

## V.

The judgment of the Appellate Division is reversed, the conviction is reinstated, and the matter is remanded to the Appellate

Division for consideration of the sentencing argument raised by defendant.

Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, and PATTERSON join in Judge RODRÍGUEZ's opinion. Judge CUFF (temporarily assigned) did not participate.

*For reversal/reinstatement/remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and RODRÍGUEZ (t/a)—6.