**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2375-15T1
                    A-2821-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUAN GUERRERO-ESTRADA, a/k/a
JUAN C. ESTRADA, JUAN C.
GUERRERO, JUAN CARLOS GUERRERO,
JUAN C. GUERRERO-ESTRADA, JUAN
C. GUERREOESTRADA,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUAN M. FLORES SANTOS, a/k/a
JUAN M. FLORES-SANTOS,

    Defendant-Appellant.

_____

Submitted October 12, 2017 — Decided November 2, 2017

Before Judges Alvarez and Currier.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-01-0008.

Joseph E. Krakora, Public Defender, attorney for appellants (Kevin G. Byrnes, Designated Counsel, and on the brief for A-2375-15; Tamar Lerer, Assistant Deputy Public Defender, of counsel and on the briefs for A-2821-15).

Christopher S. Porrino, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the briefs).

PER CURIAM

Defendants Juan Guerrero-Estrada and Juan Flores Santos appeal from the denial of their respective suppression motions and subsequent convictions following a joint trial.[1] Flores Santos also contends that the trial court failed to merge two offenses at the time of sentencing. After a review of the arguments in light of the record and applicable principles of law, we affirm.

Both defendants were charged in an indictment with second-degree conspiracy, N.J.S.A. 2C:5-2, 2C:35-5(a)(1), and 2C:35-5(b)(8); first-degree possession with intent to distribute a controlled dangerous substance (CDS) (here, methamphetamine), N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(8), and 2C:2-6; first-degree distribution of a CDS, N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(8), and

---

[1] We have consolidated these appeals for the purposes of this opinion.

2C:2-6; and third-degree possession of a CDS, <u>N.J.S.A.</u> 2C:35-10(a)(1) and 2C:2-6.

We derive the facts from the testimony presented at the suppression hearing. Several detectives and other members of the New Jersey State Police were doing investigative work in a parking lot of a large box store on an unrelated narcotics case. Detective Hugh Ribeiro noticed a car parked at the far end of the lot in an area reserved normally for tractor trailers. The vehicle was facing outwards towards incoming traffic so that its occupants could see vehicles coming into the lot. Its two occupants were later identified as defendants; Flores Santos was holding a can of beer as he sat in the passenger seat.

Based on these observations, the officers thought the car might be involved in the case they were investigating. Detective Sergeant Victorio Flora drove by defendants' vehicle. The Kansas license plate number revealed the owner to be Guerrero-Estrada.

As the police were watching, defendants' car slowly circled the store and then backed into another space in the far side of the lot by the tractor trailers, again facing incoming traffic. Detective Flora described this maneuver "as if [the car] were looking for somebody or scanning the parking lot for law enforcement personnel." He also stated that the manner in which the car was facing towards oncoming traffic and parked with the

tractor trailers far away from the store entrance was suspicious. They therefore continued to watch the car even though the officers determined it was likely unrelated to their original investigation.

The officers next observed a Zipcar[2] driving into the parking lot and coming to a stop in front of defendants' car. Co-defendant Juan Nunez got out of the Zipcar and joined Guerrero-Estrada, who had opened his trunk and was standing at the back of his car. Detective Flora testified that it appeared that Guerrero-Estrada was directing Nunez to move his car to a position behind his own vehicle so it was somewhat hidden by the parked tractor trailers. After another conversation, Nunez pulled his car alongside defendants' vehicle so the windows were aligned. The detectives then saw a white and red plastic bag thrown from the passenger side of defendants' car into the rear of the Zipcar. The Zipcar then headed toward the exit of the parking lot.

The police decided to conduct investigative traffic stops on both vehicles. The prosecutor asked Detective Flora: "[a]nd why did you and members of your team decide to stop those two vehicles?" Flora responded: "Because we all felt that an illicit

---

[2] Zipcar is an American car-sharing company which "provides automobile reservations to its members, billable by the minute, hour[,] or day." Zipcar, https://en.wikipedia.org/wiki/Zipcar (last visited Oct. 17, 2017).

transaction just occurred at that location right then and there." The detective continued, explaining that narcotics transactions often take place in parking lots and shopping plazas, particularly in close proximity to a highway, because narcotic traffickers can "hide in plain sight." He stated that law enforcement officers perform surveillance work in these areas as well because they too can "hide in plain sight."

Following the traffic stop, defendants consented to searches of the vehicles. The bag found in the Zipcar contained five bricks of crystal methamphetamine. Defendants moved to suppress the seizure of the narcotics, arguing that the police lacked reasonable suspicion to conduct an investigatory stop. In an oral decision, Judge Mitzy Galis-Menendez noted that an officer must have reasonable suspicion to believe that a motorist has engaged in or is about to engage in criminal activity in order to conduct a motor vehicle stop. A determination of reasonable suspicion consists of the "events which occurred leading up to the stop and then the decision whether [those] . . . facts viewed from [the] standpoint of an objectively reasonable police officer amount to reasonable suspicion."

The judge recounted that Guerrero-Estrada was driving a vehicle with out-of-state plates, the car circled the area while Guerrero-Estrada was on his cell phone, and then he parked again

in a parking space far from the store entrance. After Guerrero-Estrada had parked, Nunez drove into the area in a rental car. Guerrero-Estrada and Nunez spoke while standing by the trunk of Guerrero-Estrada's car, following which Nunez moved his car so it was parallel to the other vehicle. The police then observed a weighted bag tossed from one car into another. In looking at the totality of the circumstances, and finding Detective Flora to be credible, Judge Galis-Menendez concluded that the officers had reasonable and articulable suspicion to believe that they had observed criminal activity. The motion to suppress was denied.

Prior to trial, Nunez pled guilty to second-degree conspiracy to distribute narcotics. He testified at trial that he was at the shopping plaza to pick up drugs, met with Guerrero-Estrada and Flores Santos for that purpose, and the drugs were tossed from Guerrero-Estrada's car into Nunez's car. Both defendants were convicted on all charges and sentenced to prison terms of ten years. At sentencing, the judge merged the second-degree conspiracy count with both the first-degree possession with intent to distribute a CDS count and the first-degree distribution of a CDS count. The judge also merged the third-degree possession of a CDS count with the first-degree possession with intent to distribute a CDS count.

On appeal, Guerrero-Estrada raises the following arguments:

POINT ONE: THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE UNLAWFUL DETENTION.

POINT TWO: THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED.

POINT THREE: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND RIGHT TO CONFRONTATION AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND THE NEW JERSEY CONSTITUTION WERE VIOLATED BY THE ADMISSION OF HIGHLY PREJUDICIAL HEARSAY OPINION EVIDENCE. (Not Raised Below)

   A. The State Improperly Proffered Police Opinion Evidence that There Had Been a Drug Transaction

   B. The Defendant's Right to Confront Witnesses Was Violated by the Admission of Hearsay Statements of Absentee Police Officers Implicating the Defendant in the Commission of the Crimes

POINT FOUR: THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED WHEN THE JURORS WERE NOT INSTRUCTED ON ALL THE ESSENTIAL ELEMENTS OF CONSPIRACY, INTENT TO DISTRIBUTE, AND DISTRIBUTION OF CDS. (Not Raised Below)

Flores Santos reiterates these contentions in his appeal, and adds

an additional argument:

POINT V: THE COUNT OF POSSESSION WITH INTENT TO DISTRIBUTE MUST MERGE WITH THE DISTRIBUTION COUNT. MOREOVER, THE SENTENCING COURT ERRED

7

IN ORDERING DEFENDANT TO PAY FINANCIAL PENALTIES ON MERGED OFFENSES.

We begin by addressing defendants' argument that the trial judge erred in not suppressing the narcotics and other evidence obtained subsequent to a search of the vehicles. In reviewing a motion to suppress, "we accord deference to the factual findings of the trial court." State v. Scriven, 226 N.J. 20, 32 (2016). That is particularly so as "to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964). If our review satisfies us that the trial court's findings could reasonably have been reached on sufficient, credible evidence present in the record, our task is complete and we will not disturb the result. Id. at 162. Our review of the trial court's legal conclusions is plenary. State v. Rockford, 213 N.J. 424, 440 (2013).

As Judge Galis-Menendez noted, it is well-settled that "[a] police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (emphasis added) (citing

<u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 21, 88 <u>S. Ct.</u> 1868, 1880, 20 <u>L. Ed.</u> 2d 889, 906 (1968)).

Here, Flora believed he had seen criminal activity. Flora's suspicion was based on the movements of defendants' car and its location in the parking lot, and his knowledge that narcotics trafficking often takes place in large parking lots within close proximity to a highway. The judge was uniquely able to observe Flora's demeanor at the motion hearing and she found the detective to be credible. Her findings are entitled to deference. <u>State v. Walker</u>, 213 <u>N.J.</u> 281, 290 (2013) (finding that the court must give deference to the trial court's credibility findings, especially when a sole witness presents largely uncontested testimony that was challenged on cross-examination).

At the conclusion of the State's case, defendants moved for acquittal on several of the counts, arguing that they could not be charged with possession with intent to distribute or distribution of a CDS because defendants cannot intend to distribute to each other drugs they already jointly possess. Defendants alleged that they and Nunez jointly and constructively possessed the methamphetamine at all times, and one cannot "conspire to possess with an intent to distribute with somebody else with whom you already have shared possession over it."

In response, the State argued that Guerrero-Estrada and Flores Santos possessed the drugs in their car and acted together to transfer the narcotics into Nunez's vehicle. The judge denied the acquittal motion, concluding that the State had provided sufficient evidence that defendants possessed and distributed the narcotics. She also noted that Nunez testified that he had a phone conversation with Guerrero-Estrada who informed him where to pick up the package, and she found this to be additional evidence for a jury to determine there was an agreement to distribute.

In our review, we apply the same standard as did the trial judge, and deny a motion under Rule 3:18-1 if "viewing the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 459 (1967). Based on our review of the record and applicable law, we deem this argument lacks sufficient merit to warrant any discussion in addition to the comments set forth in the trial court's oral ruling of December 8, 2015. R. 2:11-3(e)(2). There was ample evidence presented by the State for the jury to consider and convict defendants on each charged offense.

Defendants contend that a portion of Detective Flora's testimony was improper opinion evidence and impermissible hearsay. Flora testified that, after observing the two vehicles for a period of time as described, "myself and my unit members believed that an illicit transaction took place so we decided to conduct simultaneous investigative motor vehicle stops on both vehicles." Defendants argue that this testimony exceeded the limits of the lay testimony that police officers may present, violating the precepts established in State v. McLean, 205 N.J. 438 (2011), and contend that the officer improperly opined on the ultimate issue in the case. Defendants did not object to this testimony at trial and we therefore review it under a plain error standard; defendants must show that it is an error "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

In McLean, the prosecutor asked a police detective at trial if he thought "that [what he observed] was a hand-to-hand drug transaction." McLean, supra, 205 N.J. at 446. The officer responded affirmatively. Id. at 446-47. The Court found the testimony to be improper. Id. at 463. Because the testimony of the police detective was elicited by a question that referred to the officer's training, education, and experience, it called for an impermissible expert opinion. Ibid.

Here, Flora's testimony was elicited by the question: "[a]nd what happened after that?" There was no reference to the officer's training, education, or experience. Flora answered the question based on his observations, commenting that "an illicit transaction" had occurred; he did not express a direct opinion that defendant was guilty of the charged crime. Flora's brief comment did not rise to the level of impermissible expert testimony found objectionable in McLean. "[A]n expert may 'characterize[] defendant's conduct based on the facts in evidence in light of his specialized knowledge[;] and the opinion is not objectionable even though it embraces ultimate issues that the jury must decide.'" Id. at 454 (quoting State v. Odom, 116 N.J. 65, 79 (1989)).

We are more troubled by the portion of Flora's statement in which he implied that other unit members also believed that an illicit transaction had taken place. As there was no objection the State was not given the opportunity to present other officers as witnesses to corroborate the testimony and correct the error. We disagree with defendants' argument that the statement violated State v. Bankston, 63 N.J. 263, 271 (1973), as the jury was not led to believe that an unidentified witness only known to Flora told police that defendant was involved in a crime. Rather, the detective was explaining why his personal observations led him to

12

take the subsequent action of conducting a motor vehicle stop. Any error in the fleeting statement was harmless.

We find insufficient merit in defendants' argument set forth in Point Four to warrant further discussion in a written opinion. R. 2:11-3(e)(2). Defendants were not charged with attempted distribution of CDS; the charges stemmed from the actual possession and distribution of narcotics. The judge properly followed the Model Jury Charges for each offense.

Flores Santos further argues on appeal that the trial judge erred in her failure to merge the possession with intent to distribute count with the distribution count as these two charges encompass the same act. We disagree. See State v. Valentine, 69 N.J. 205, 211 (1976); State v. Davis, 68 N.J. 69, 84 (1975) (the crime of possession with intent to distribute CDS does not merge with the crime of distribution of CDS). The offenses here occurred at separate stages of the offensive conduct. Defendants committed possession with intent to distribute when they left Kansas with the narcotics and traveled to New Jersey. The distribution offense did not occur until defendants were in New Jersey and transferred the drugs to Nunez in the parking lot.

Flores Santos also states that he was improperly ordered to pay penalties on the two counts that were correctly merged. We agree, as does the State, that separate fines and penalties should

not be imposed on merged counts. We, therefore, remand to the trial court for the sole purpose of amending defendants' Judgments of Conviction to reflect the proper assessments.

Affirmed in part, remanded for amendment of the Judgments of Conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2375-15T1